**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| PAUL KEOHANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-02081-HHK |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

---

**BRIEF IN SUPPORT OF UNITED STATES'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Paul Keohane ("Keohane") has sued the United States for damages under section 7433 of the Internal Revenue Code (26 U.S.C.), claiming that the Internal Revenue Service ("IRS" or "the Service") wrongfully collected too much from his Social Security benefits to pay his federal income tax debts. Tax assessments were made against Keohane in 1998 after he failed to file his 1994 federal income tax returns. After Keohane filed his delinquent 1994 return in 2007 showing that he had no tax liability, the IRS refunded all of the levied funds that had not been applied to his uncontested tax liabilities. Plaintiff nevertheless seeks to recover $765.00 in internet charges, postage, and courier fees incurred in administratively challenging the levy. The real legal issue in this case is whether the IRS can levy on the taxpayer's <u>right</u> to receive such Social Security payments under Code section 6331. Furthermore, because plaintiff did not bring his suit within two years of the date on which any right of action for damages accrued, and because he has not sustained any actual, direct economic damages, his suit must be dismissed.

## Statement of Facts

The following facts are undisputed, as agreed by the parties in the Statement of Stipulated Facts ("Stip."):

1. Plaintiff Paul Keohane is a United States citizen.  He currently resides at Teguh Apartment 36, A14#3 Gerbank Erskine, Pulau Penang 10470, Penang, Malaysia.  (Stip. ¶ 1).

2. In 1994, plaintiff worked in Jakarta, Indonesia.  He did not timely file a federal income tax return for the taxable year ended December 31, 1994.  (Stip. ¶ 2).

3. The IRS prepared a substitute federal income tax return for Keohane for the taxable year ended December 31, 1994.  The United States assessed a deficiency totaling $18,903.00 for that taxable year against Plaintiff on October 19, 1998.  (Stip. ¶ 3).

4. The IRS credited plaintiff with withheld income tax of $8,273.00, which amount was deemed paid on April 15, 1995.  (Stip. ¶ 4).

5. Plaintiff and his wife Juat C. Lim filed joint returns for the 1998, 1999, 2000, 2001, 2002, 2003, and 2004 tax years.  The returns were timely filed for each tax year on or before April 15 of the following year.  (Stip. ¶ 5).

6. The IRS sent plaintiff notices of intent to levy on or about August 21, 2000, August 28, 2000, April 23, 2002, and May 15, 2002, addressed to his last known address.  Plaintiff did not receive these notices.  (Stip. ¶ 6).

7. Plaintiff began receiving Social Security benefits in February 2003.  (Stip. ¶ 7).

8. In June 2005, the IRS began to levy plaintiff's Social Security payments in the amount of $451.90.  Thereafter, the IRS received the levied $451.90 from the Social Security Administration from plaintiff's Social Security payments upon the issuance of each Social Security check to plaintiff,

approximately once a month.  (Stip. ¶ 8).

9.  To execute this levy, the IRS issued a single paper levy to the Social Security Administration.  This single levy, with no additional action by the IRS, removed $451.90 each month from plaintiff's account.  (Stip. ¶ 9).

10.  Plaintiff became aware that his Social Security payments were the subject of an IRS levy no later than his receipt of a letter from the Social Security Administration dated May 18, 2005. Plaintiff received this letter less than one month after it was sent.  Attached as Exhibit A is a true and correct copy of the May 18, 2005 letter.  (Stip. ¶ 10).

11.  On or about June 6, 2005, Plaintiff knew that the IRS had taken $451.90 from his Social Security payment.  Plaintiff knew that the IRS took $451.90 from each Social Security payment thereafter until July 26, 2007.  He also knew each month that the $451.90 levy exceeded fifteen (15) percent of his monthly Social Security payment.  (Stip. ¶ 11).

12.  On May 2, 2007, Plaintiff and his wife, Juat C. Lim, filed a joint federal income tax return for the taxable year ended December 31, 1994.  On June 18, 2007, the IRS accepted Plaintiff and his wife's joint federal individual income tax return for the taxable year ended December 31, 1994.  That return reflected tax due of $8,834.00, a late filing penalty of $1,987.65, a penalty for failure to pay tax of $2,208.50, and $2,541.87 in interest.  (Stip. ¶ 12).

13.  On July 23, 2007, the IRS refunded $8,947.87 to Plaintiff.  On that date, the IRS also released the levy on Plaintiff's property by filing a Form 668-D, Release of Levy/Release of Property by Levy.  (Stip. ¶ 13).

14.   The IRS again levied Plaintiff's Social Security payment on July 26, 2007 in the amount of $451.90.  On August 13, 2007, the IRS refunded the amount levied on July 26, 2007, together with $0.50 of interest, for a total payment of $452.40.  (Stip. ¶ 14).

15.   Plaintiff's monthly Social Security payments in 2005 were $1,135.00, in 2006 were $1,181.00, and in 2007 were $1,220.00.  (Stip. ¶ 15).

16.   The monthly levied amount of $451.90 constituted approximately forty (40) percent of Plaintiff's monthly 2005 Social Security payments, thirty-eight (38) percent of his monthly 2006 Social Security payments, and thirty-seven (37) percent of his monthly 2007 Social Security payments.  (Stip. ¶ 16).

17.   $451.90 in 2005, 2006, and 2007 constituted in excess of 15% of Plaintiff's monthly Social Security payments during those years.  (Stip. ¶ 17).

18.   Plaintiff did not learn until after December 4, 2006, that the IRS had not been executing separate monthly levies against his Social Security payments.  Plaintiff did not learn until after December 4, 2006, that the IRS was in fact relying on the continuing effect of a single paper levy for its monthly removal of $451.90 from Plaintiff's Social Security benefits.  (Stip. ¶ 18).

19.   Before December 4, 2006, Plaintiff Paul Keohane contacted the University of Connecticut Law School Tax Clinic (the "Tax Clinic") to request legal assistance with respect to the monthly $451.90 levy upon his Social Security payments.  (Stip. ¶ 19).

20.   Plaintiff does not have internet access in his home.  In order to correspond with the Tax Clinic to seek help with obtaining relief from the levy, plaintiff incurred internet access charges at a local internet cafe, postage costs, and courier fees.  (Stip. ¶ 20).

21.  During 2007, plaintiff incurred expenses equaling $23.55 in postage fees to communicate

4

with the Tax Clinic.  (<u>Stip.</u> ¶¶ 21, 22).

22.   Plaintiff sent this correspondence to the University of Connecticut Tax Clinic as a proximate result of the IRS levying in excess of 15% of his monthly Social Security payments.  (<u>Stip.</u> ¶ 23).

23.   On or about November 27, 2007, plaintiff filed an administrative claim for unlawful collection action.  The claim alleged that the IRS had improperly continuously levied in excess of 15% of his Social Security benefits.  (<u>Stip.</u> ¶ 24).

24.   On or about December 12, 2007, the IRS sent plaintiff a letter stating that his administrative claim could not be processed because it had not included documentation of the alleged damages he had incurred.  (<u>Stip.</u> ¶ 25).

25.   On or about January 4, 2008, plaintiff resubmitted his administrative claim, to which he attached materials to further document his alleged damages.  Among the attached materials were copies of stamped envelopes he had sent to the Tax Clinic in which he had transmitted correspondence and other documents relating to the IRS's levy of his Social Security payments. (<u>Stip.</u> ¶ 26).

26.   On or about May 28, 2008, the IRS denied plaintiff's administrative claim because (1) it found no evidence of a violation of the Internal Revenue Code and (2) it deemed Plaintiff's claim untimely.  A copy of the IRS's May 28, 2008, letter is attached as Exhibit B.  (<u>Stip.</u> ¶ 27).

27.   On December 4, 2008, plaintiff caused to be filed his Complaint in this action.  (<u>Stip.</u> ¶ 28).

28.   On December 4, 2008, in order to bring this action, plaintiff caused to be paid a filing fee of $350 to the Clerk of the United States District Court of the District of Columbia.  (<u>Stip.</u> ¶ 29).

5

**Table of Authorities**

<u>Cases</u>

<u>Beam v. United States</u>, 2007 U.S. Dist. LEXIS 42903 (D. Ore. 2007)...........................................30

<u>Bright v. United States</u>, 446 F. Supp. 2d 339 (E. D. Pa. 2006)...................................................14, 17

<u>Caparaso v. Commissioner</u>, 907 F. Supp. 1235 (N.D. Ind. 1995)......................................................13

<u>Cato v. United States</u>, 70 F.3d 1103 (9th Cir. 1995).........................................................................13

<u>Claitor v. United States</u>, 1999 WL 675337 (N.D. Cal. July 19, 1999).............................................19

<u>In re Connor</u>, 27 F.3d 365 (9th Cir. 1994)........................................................................................28

<u>Cook County, Il. v. U.S. ex rel. Chandler</u>, 538 U.S. 119 (2003).......................................................12

<u>Delvecchio v. Smith</u>, 558 F. Supp. 2d 1243 (S.D. Fla. 2008)............................................................16

<u>Department of the Army v. Federal Labor Relations Authority</u>, 56 F.3d 273
(D.C. Cir. 1995)..................................................................................................................................13

<u>Drye v. United States</u>, 528 U.S. 49 (1999).................................................................................11, 29

<u>Duran v. I.R.S.</u>, 2009 WL 700518 (E.D. Cal. 2009).........................................................................30

*<u>Dziura v. United States</u>, 168 F.3d 581 (1st Cir. 1999).............................................14, 15, 18, 19

<u>Felter v. Kempthorne</u>, 473 F.3d 1255 (D.C. Cir. 2007)...............................................................18, 23

<u>Gandy Nursery, Inc. v. United States</u>, 318 F.3d 631 (5th Cir. 2003)................................................14

<u>Glantz v. United States</u>, 1997 WL 718474 (Fed. Cl. Sept. 17, 1997)...............................................25

<u>Gonsalves v. Internal Revenue Service</u>, 975 F.2d 13 (5th Cir. 1992)...............................................13

*<u>Hines v. United States</u>, ---, F. Supp. 2d -- 2009 WL 3113238 (D.D.C. Sept.
30, 2009).......................................................................................................................................12, 26

<u>Hynard v. United States</u>, 233 F. Supp. 2d 502 (S.D.N.Y. 2002)......................................................14

<u>J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred International, Inc.</u>, 534 U.S. 124 (2001)......................13

Johnson v. United States, 188 F.R.D. 692 (N.D. Ga. 1999)..........................................................17

In re Kirk, 100 B.R. 85 (Bankr. M.D. Fla. 1989)...............................................................27, 28

Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618 (2007).............................21, 22

Long Island Radio Co. v. NLRB, 841 F.2d 474 (2nd Cir. 1988)......................................13

*Long v. United States, 604 F. Supp. 2d 119 (D.D.C. March 31, 2009)............................14, 19, 20

Lorance v. AT&T Technologies, Inc., 490 U.S. 900 (1989)..........................................22

Macklin v. United States, 300 F.3d 814 (7th Cir. 2002)................................................18

Mason v. United States, 2001 WL 241799 (D.C. Cir. Feb. 2, 2001)..............................20, 21

Milby v. United States, 172 F. Supp. 2d 606 (W.D. Pa. 2001)......................................14, 17

Nesovic v. United States, 71 F.3d 776 (9th Cir. 1995)...................................................13, 19

Page v. United States, 729 F.2d 818 (D.C. Cir. 1984)...................................................21

Perkins v. Nash, 697 F. Supp. 527 (D.D.C. 1988)......................................................18, 20

Posadas v. National City Bank, 296 U.S. 497 (1936).....................................................12

Powell v. Castaneda, 390 F. Supp. 2d 1 (D.D.C. 2005)................................................18

Ranciato v. United States, 2001 WL 58827 (D. Conn. Jan. 23, 2001)...........................17

Richards v. Duke University, 480 F. Supp. 2d 222 (D.D.C. 2007)................................18

Schmiedigen v. Celebrezze, 245 F. Supp. 825 (D.D.C. 1965)......................................26

Simmons v. United States, 875 F. Supp. 318 (W.D.N.C. 1994)...................................16

Smith v. I.R.S., 1991 U.S. App. LEXIS 23139 (8th Cir. 1991)....................................28

Snyder v. IRS, 1998 WL 796768 (D.D.C. Oct. 6,  1998)..............................................16

Stirling v. Commissioner, 998 F. Supp. 640 (E.D.N.C. 1997).......................................17

Stjernholm v. Peterson, 85 F.3d 641, 1996 WL 238926 (10th Cir. May 9, 1996).........17

Sylvester v. United States, 978 F. Supp. 1186 (E.D. Wis. 1997)....................................................17

Taylor v. FDIC, 132 F.3d 753 (D.C. Cir. 1997)...........................................................................20

United States v. Dalm, 494 U.S. 596 (1990)................................................................................14

United States v. Jefferson-Pilot Life Insurance Co., 49 F.3d 1020 (4th Cir. 1993)......................28

United States v. Kubrick, 444 U.S. 111 (1979).............................................................................18

United States v. Marsh, 89 F. Supp. 2d 1171 (D. Hi. 2000)....................................................*passim*

United States v. Mitchell, 455 U.S. 535 (1980).............................................................................13

United States v. Mottaz, 476 U.S. 834 (1986)...............................................................................13

United States v. National Bank of Commerce, 472 U.S. 713 (1985).............................................11

United States v. Nordic Village, Inc., 503 U.S. 30 (1992).............................................................13

Wallace v. United States, 557 F. Supp. 2d 100 (D.D.C. 2008).....................................................19

Wallace v. United States, No. 08-cv-156-B (D. Wyo. 2009)..........................................................20

In re Wessel, 161 B.R. 155 (Bankr. D. S.C. 1993)........................................................................28

Wise v. C.I.R., 168 F. Supp. 2d 649 (S.D. Tx. 2001)................................................................24, 25

Federal Statutes

42 U.S.C. § 2000e-2(a)(1)...........................................................................................................21

42 U.S.C. § 2000e-5(e)(2)............................................................................................................22

42 U.S.C. § 402 *et seq*............................................................................................................26, 28

26 C.F.R. § 301.6331-1(a)........................................................................................................11, 27

26 C.F.R. § 301.7433-1(b)(1)....................................................................................................23, 24

26 C.F.R. § 301.7433-1(g)(2)....................................................................................................14, 18

26 C.F.R. § 301.7433-1(h).............................................................................................................23

26 U.S.C. § 6331(a)................................................................................................11

26 U.S.C. § 6331(h)............................................................................................*passim*

26 U.S.C. § 6334........................................................................................22, 28, 32

26 U.S.C. §§ 7430(f)(1)........................................................................................25

26 U.S.C. § 7430(f)(2)..........................................................................................24

26 U.S.C. § 7432..................................................................................................15

26 U.S.C. § 7433............................................................................................*passim*

26 U.S.C. § 7433(a)..............................................................................................22

26 U.S.C. § 7433(b)(1)..........................................................................................22

26 U.S.C. § 7433(d)(2)..........................................................................................14

26 U.S.C. § 7433(d)(3)..........................................................................................14

<u>Miscellaneous</u>

H.R. Rep. No. 105-148 (1997)..............................................................................31

<u>Internal Revenue Service Tax Time 1998</u> at 4 (Jan. 1998)....................................32

Office of Mgmt. & Budget, <u>Budget of the United States Government, 1998 Fiscal Year: Analytical Perspectives</u> 55, 61 (1997)............................................31

Office of Mgt. & Budget, Budget of the United States Government, <u>Fiscal Year 1998: A Citizen's Guide to the Budget</u>, (1997)....................................31

Pub. L. 111-2, § 2, Jan. 29, 2009, 123 Stat. 5....................................................22

Staff of Jt. Comm. on Taxation, <u>Gen. Explanation of Tax Legislation Enacted in 1997</u> (Comm. Print. 1997)....................................................................30

Tax Analysts, <u>Budget Briefing on Clinton Tax Proposals</u>........................................31

Tax Technical Corrections Act of 1997, H.R. 2645............................................31

**Table of Contents**

| | |
|---|---|
| Statement of Facts | 2 |
| Table of Authorities | 6 |
| Standard | 11 |
| Argument | 11 |
| I.     Plaintiff's Claim Is Barred By the Statute of Limitations. | 13 |
| A.     Plaintiff's Cause of Action Accrued On June 6, 2005, When He Knew Or Should Have Known the Facts Forming the Elements of His Claim. | 14 |
| 1.     Plaintiff's Claim Accrued On the Date His Social Security Benefits Were First Levied. | 15 |
| 2.     The Continuing Violation Theory Is Inapplicable to Claims Under Section 7433. | 18 |
| B.     Ongoing Effects Do Not Give Life To Continuing Violations. | 21 |
| II.     Plaintiff Did Not Sustain Actual, Direct Economic Damages. | 22 |
| A.     Plaintiff's Alleged Damages Are Administrative Costs and Not Recoverable. | 23 |
| B.     The Proper Forum For Plaintiff's Claim For Administrative Costs Is the United States Tax Court. | 24 |
| III.     Plaintiff Fails To State a Claim Because the IRS Is Permitted To Levy In Excess Of Fifteen Percent On Social Security Benefits Under 26 U.S.C. § 6331(a). | 25 |
| A.     The Internal Revenue Service Levied Keohane's Social Security Benefits Pursuant to Section 6331(a), and Was Therefore Entitled To Levy In Excess Of 15% Of the Total Monthly Payment. | 26 |
| B.     The Levy Was Not a Continuous Levy Under Section 6331(h). | 27 |
| C.     Section 6331(h) Permits Continuous Levies, But Does Not Mandate Them, And Only Levies Made Under 6331(h) Are Capped At 15%. | 28 |
| D.     Legislative History Confirms That Congress Intended Use Of Section 6331(h) To Be Discretionary and Did Not Mean To Limit Existing Levy Powers. | 30 |
| Conclusion | 33 |

**Standard**

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A fact is material if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are irrelevant or unnecessary do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007).

The law governing this case is such that the facts pled by the plaintiff in his complaint and agreed upon by the parties in the Statement of Stipulated Facts are sufficient to warrant summary judgment in favor of the United States.

**Argument**

The IRS may levy on all property and rights to property of a taxpayer or on which there is a tax lien. 26 U.S.C. § 6331(a). The levy authority under section 6331(a) "is broad, and reveals on its face that Congress meant to reach every interest in property a taxpayer might have." Drye v. United States, 528 U.S. 49, 56 (1999) (quoting United States v. Nat'l Bank of Commerce, 472 U.S. 713, 719-20 (1985)). A levy under section 6331(a) reaches "obligations which exist at the time of the levy," and the "right to receive payment [to which levies attach] can derive from obligations to pay the taxpayer in the future." 26 C.F.R. § 301.6331-1(a). The only limitations on an IRS levy brought under section 6331(a) are those in 26 U.S.C. § 6334, which do not apply to this case.

Keohane's right to receive Social Security benefits are therefore within the scope of the section 6331(a) levy power.  See Hines v. United States, --- F. Supp. 2d ---, 2009 WL 3113238 at *6, No. 08-0914 (D.D.C. Sept. 30, 2009).  Levies under section 6331(a) are made using a paper levy form such as, for example, IRS Form 668-W.

In 1997, Congress expanded the Service's levy authority by enacting 26 U.S.C. § 6331(h). Section 6331(h) authorizes a continuous levy on up to fifteen percent of certain "specified payments."  "Specified payments" include federal payments other than those for which eligibility is based upon the payee's income, assets, or both.  26 U.S.C. § 6331(h)(2)(A).  Social Security payments made under Title II of the Social Security Act (Retirement, Survivors, and Disability Insurance) come within the definition of specified payments.  Continuous levies under section 6331(h) are not limited by the exemptions provided in section 6334.  Section 6331(h) has been implemented through the Federal Payment Levy Program, an automated program that uses electronic communications (or "electronic levies") between the Service and other federal agencies.

Section 6331(h) was enacted to give the IRS an additional levy tool, and did not restrict the powers it already had under section 6331(a).[1]  Section 6331(h) did not repeal section 6331(a) in any part.  See Hines, 2009 WL 3113238 at *5.  Furthermore, repeals by implication are disfavored.  Cook County, Il. v. U.S. ex rel. Chandler, 538 U.S. 119, 123 (2003) (quoting Posadas v. National City Bank, 296 U.S. 497 (1936)).  Repeal will not be implied unless the two statutes cannot be reconciled

---

[1] The availability of both FPLP levies and non-FPLP levies is reflected in the Internal Revenue Manual.  See IRM § 5.11.7.2.5.1 (discussing the difference between FPLP levies and paper levies); IRM § 5.19.9.3.5.1 (same); IRS Publication 4418, What You Need to Know About the Federal Payment Levy Program ("There are two ways the IRS may levy upon your Social Security benefits – via the automated Federal Payment Levy Program (FPLP) or by a manual (non-FPLP) levy.").

and unless intent to repeal by implication is clear.  J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 126 (2001).  The two levy programs both reach Social Security benefits.  In this case, the IRS levied under section 6331(a), and so was not limited to fifteen percent of plaintiff's benefit.

### I.       Plaintiff's Claim Is Barred By the Statute of Limitations.

The United States "is immune from suit save as it consents to be sued."  United States v. Mitchell, 455 U.S. 535, 538 (1980); see also United States v. Dalm, 494 U.S. 596, 608 (1990).  A party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived.  See Cato v. United States, 70 F.3d 1103, 1107 (9th Cir. 1995).  A statute purporting to waive the United States' sovereign immunity must do so "unequivocally."  Dep't. of the Army v. Fed. Labor Relations Auth., 56 F.3d 273, 277 (D.C. Cir. 1995).  "[W]hen consent to sue the United States is granted, such as by way of § 7433, the precise terms, conditions, and qualifications of such consent must be scrupulously followed."  United States v. Marsh, 89 F.Supp.2d 1171, 1175 (D. Haw. 2000) (citing Caparaso v. Commissioner, 907 F. Supp. 1235, 1239 (N.D. Ind. 1995)); see also United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992); Gonsalves v. Internal Revenue Service, 975 F.2d 13, 15-16 (5th Cir. 1992) ("Section 7433's waiver of sovereign immunity, like any other, must be strictly observed... and construed in favor of the sovereign") (quotations omitted); Long Island Radio Co. v. NLRB, 841 F.2d 474, 477 (2nd Cir. 1988).

"The failure to sue the United States within the period of limitations is not simply a waivable defense; it deprives the district court of jurisdiction to entertain the claim."  Nesovic v. United States, 71 F.3d 776, 777-78 (9th Cir. 1995) (citing United States v. Mottaz, 476 U.S. 834, 841 (1986) ("In particular, when waiver legislation contains a statute of limitations, the limitations provision

13

constitutes a condition on the waiver of sovereign immunity.") <u>See</u> <u>also</u> <u>Gandy Nursery, Inc. v. United States</u>, 318 F.3d 631, 637 (5th Cir. 2003); <u>accord</u> <u>Dalm</u>, 494 U.S. at 608.  Because plaintiff failed to bring his suit within the two-year limitations period, this action should be dismissed for lack of subject matter jurisdiction.

Some courts considering a suit brought outside the two year limitation period of section 7433 have dismissed the case for failure to state a claim upon which relief can be granted.  <u>See</u> <u>e.g.</u>, <u>Long v. United States</u>, 604 F. Supp. 2d 119 (D.D.C. March 31, 2009); <u>Milby v. United States</u>, 172 F. Supp. 2d 606, 610 (W.D. Pa. 2001).  In the event that the court construes this part of the United States' motion for summary judgment as a motion to dismiss for failure to state a claim upon which relief can be granted, the United States is entitled to judgment as a matter of law.

### A.    Plaintiff's Cause of Action Accrued On June 6, 2005, When He Knew Or Should Have Known the Facts Forming the Elements of His Claim.

An action under section 7433 "may be brought only within 2 years after the date the right of action accrues."  26 U.S.C. § 7433(d)(3).  A cause of action accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action."  26 C.F.R. § 301.7433-1(g)(2).  A taxpayer "has a reasonable opportunity to discover" the essential element of his cause of action under section 7433 when he learns of a levy on his property.  <u>Bright v. United States</u>, 446 F.Supp.2d 339, 344 (E. D. Pa. 2006) (citing <u>Dziura v. United States</u>, 168 F.3d 581, 583 (1st Cir. 1999)); <u>see also</u> <u>Hynard v. United States</u>, 233 F.Supp.2d 502, 510 (S.D.N.Y. 2002); <u>Marsh</u>, 89 F. Supp. 2d at 1175-76.  This is consistent with the policy that a taxpayer must mitigate his damages, enshrined in 26 U.S.C. § 7433(d)(2).  Allowing a taxpayer to wait beyond the two-year limitations period from which he first learns of his cause of action is a disincentive to bringing a

claim promptly, and thereby mitigate the amount of damages.

1.      **Plaintiff's Claim Accrued On the Date His Social Security Benefits Were First Levied.**

Dziura illustrates when a claim accrues under section 7433.  In Dziura, the IRS seized two of the plaintiffs' paintings.  168 F.3d at 582.  One of the paintings was sold at an auction, and the IRS kept the second painting until it was sold eight months later at a second auction.  Id.  Retaining the second painting more than forty days after the first auction violated the version of section 6335[2] then in effect; by statute it should have been returned to the taxpayers at that time.  168 F.3d at 582.  Instead, the IRS held the second painting for eight months before selling it at a second auction.  The First Circuit acknowledged the validity of the Dziuras' claim, but upheld its dismissal because it was brought too late.  Id.  The taxpayers in Dziura argued that the statute of limitations should not have begun to run until the second painting was sold at the second auction, reasoning that because the IRS continued to hold their painting in violation of the statute, this constituted a "continuing violation" of section 7433.  Id. at 582-83.  The Court of Appeals rejected the Dziuras' continuing violation theory.  Instead, the court held that the period of limitations had expired because the Dziuras knew or should have known about the essential elements of their damages claim when both paintings were not sold at the first auction, or, at the very latest, when they received notice of the second auction.  Id. at 583.[3]  Because the plaintiffs waited more than two years from the date they were notified of

_____

[2] Section 6335 governs the sale of property seized subject to an IRS levy, and requires that property not disposed of at sale be returned to the taxpayer.

[3] The Third Circuit has rejected the continuing violation theory when raised in an argument similar to the one in Dziura.  See Snyder v. United States, 260 Fed. Appx. 488 (3rd Cir. 2008).  In Snyder, the court rejected the continuing violation theory when the appellant attempted to save a claim brought late under 26 U.S.C. § 7432.  Id. at 493.  The court noted that a cause of action brought under section 7433 would be time-barred under the same analysis as a cause of

15

the second auction, their claim was barred.  Id.

Other courts have followed Dziura, adopting a bright-line rule that the cause of action accrues as soon as the IRS collection action begins.  See Snyder v. IRS, 1998 WL 796768 (D.D.C. Oct. 6, 1998); Simmons v. United States, 875 F.Supp. 318 (W.D.N.C. 1994).  Under this analysis, plaintiff's cause of action accrued on August 21, 2000, the date the IRS first notified Keohane that it intended to collect his unpaid 1994 federal income tax liabilities.  The latest date on which Keohane had a reasonable opportunity to discover that his Social Security payments had been seized was June 6, 2005, the date on which the IRS first seized money from his Social Security check.  Keohane has admitted that he received a notice from the SSA prior to the first levy deduction.  (Stip. Facts ¶ 10). By letter dated May 18, 2005, he was notified by the Social Security Administration that his Social Security benefit would be reduced in order to pay his taxes.  A portion of his Social Security benefit was then levied in accordance with the notice.  Keohane was therefore aware, beginning on June 6, 2005, that the IRS was levying more than 15% of his Social Security benefit.  (Stip. Facts ¶ 11).  Not only did he have a reasonable opportunity to discover the essential elements of his claim, Keohane had actual knowledge of all of the essential facts.  Keohane was therefore required to bring his claim no later than June 6, 2007.  Both the administrative claim (made November 27, 2007) and this suit (filed December 3, 2008) fall outside that limitation period.

Where the plaintiff was aware of sufficient facts to know or discover the elements of his cause of action, courts have held repeatedly that the statute of limitations begins to run at that time. See Delvecchio v. Smith, 558 F. Supp. 2d 1243, 1250 (S.D. Fla. 2008) (plaintiffs' claim accrued upon notice of tax lien on their home); Bright, 446 F. Supp. 2d at 333 (D. Hi.) (plaintiff, who did not

---

action under section 7432.  Id. at 493 n. 5.

receive notice of intent to levy, knew or should have known that IRS had not provided him with notice and had facts sufficient to learn the essential elements of his cause of action on day IRS first garnished his wages); Marsh, 89 F. Supp. 2d at 1175-76 (E.D. Pa.) (statute of limitations began to run when plaintiff knew about section 7433 claims, which accrued on the date pension fund began remitting all but $1.00 of plaintiff's semi-monthly retirement benefit to IRS); Milby, 172 F. Supp. 2d at 610 (W.D. Pa.) (claim accrued when plaintiff sent letter indicating he was aware of the facts of his claim); Ranciato v. United States, 2001 WL 58827, at *3 (D. Conn. Jan. 23, 2001) (cause of action accrued when plaintiff had reason to know of levies); Johnson v. United States, 188 F.R.D. 692, 702 (N.D. Ga. 1999) (claim accrued on date evidence showed plaintiffs became aware of the elements of their cause of action); Sylvester v. United States, 978 F.Supp. 1186, 1190-91 (E.D. Wis. 1997) (claims accrued when plaintiff became aware of facts supporting his claim); Stirling v. Commissioner, 998 F. Supp. 640, 641 (E.D.N.C. 1997) (summary judgment granted where plaintiff filed suit more than two years after he became aware of alleged infractions of Internal Revenue Code); Stjernholm v. Peterson, 85 F.3d 641, *2, 1996 WL 238926 (10th Cir. May 9, 1996) (section 7433 claim accrued on date plaintiffs filed public notice in newspaper, showing they were aware of the facts underpinning their cause of action).

Keohane knew or should have known of the levy on his Social Security payments on June 6, 2005, when $451.90 was deducted from his Social Security benefits.  Not only was his Social Security benefit reduced by $451.90, he also knew the reason why his benefit had been reduced because the Social Security Administration had informed him that money was being taken to pay his tax liabilities.  Keohane therefore had two years, until June 6, 2007, to bring his claim.  He failed to bring his claim in a timely fashion, and it should therefore be dismissed for lack of subject matter

jurisdiction.

**2.    The Continuing Violation Theory Is Inapplicable to Claims Under Section 7433.**

Keohane's stale claim for damages under section 7433 cannot be resuscitated under a continuing violation theory. The <u>Dziura</u> court noted that the continuing violation theory is drawn from tort law, and is "generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it." 168 F.3d at 583 (citations omitted). The courts that have examined this issue have consistently applied the general rule that the applicable limitation period begins to run when an injured party knows or should have known the critical facts that are related to the claim. <u>See id.</u> (citing <u>United States v. Kubrick</u>, 444 U.S. 111, 122-24 (1979); 26 C.F.R. § 301.7433-1(g)(2)); <u>Perkins v. Nash</u>, 697 F. Supp. 527, 533 (D.D.C. 1988) (continuing violation doctrine is applicable "only in certain, unusual circumstances." ); <u>Felter v. Kempthome</u>, 473 F.3d 1255, 1260 (D.C. Cir. 2007) (continuing violation theory typically is confined to employment discrimination claims); <u>Richards v. Duke University</u>, 480 F. Supp. 2d 222, 236 (D.D.C. 2007) (stating that the continuing violation doctrine only applies to a "narrow set of facts").

Courts generally refuse to employ the continuing violation theory to ensure that it does not obviate statutes of limitations. <u>See</u> <u>Powell v. Castaneda</u>, 390 F. Supp. 2d 1, 9 (D.D.C. 2005). Two other courts of appeals have declined to apply the continuing violation theory to claim accrual in the context of a challenge to a federal tax lien. <u>See</u> <u>Macklin v. United States</u>, 300 F.3d 814, 824 (7th Cir. 2002) (the continuing violation doctrine has no applicability to a case alleging the "lingering injury of a single alleged wrong, the filing of a tax lien"); <u>Nesovic v. United States</u>, 71 F.3d 776, 778 (9th

Cir. 1995) (filing of lien a single act).  As the Third Circuit explained in <u>Dziura</u>:

> To give credence to the taxpayers' continuing violation theory would, in these circumstances, scuttle a statute of limitations that Congress purposefully wrote and turn it into a dead letter. We refuse to take that path, for to do so would wreak havoc with the law's ability to grant repose and would be an open invitation to the assertion of the stalest of claims.

168 F.3d at 583 (quotations omitted).

Keohane's complaint alleges that a violation of 26 U.S.C. § 6331 occurred when the IRS levied approximately 40% of his Social Security payment on June 6, 2005.  Plaintiff's right of action did not depend on any subsequent actions.  Therefore, it would be improper to apply the continuing violation theory to this case.

There have been two cases where courts have failed to follow <u>Dziura</u>.  <u>See</u> <u>Wallace v. United States</u>, 557 F. Supp. 2d 100, 104 (D.D.C. 2008); <u>Claitor v. United States</u>, 1999 WL 675337 (N.D. Cal. July 19, 1999).   The district court in <u>Wallace</u> held (early in the case and before the facts were developed) that the statute of limitations would not begin to run until a levy had been released. Relying on <u>Claitor</u>, the <u>Wallace</u> court reasoned that it would not consider the attachment of the levy as the date of accrual because that would allow the defendant to continue illegal activity indefinitely.

A court in this district recently recognized the shortcomings of the <u>Wallace</u> decision.  <u>See</u> <u>Long</u>, 604 F. Supp. 2d 119.  When the court in <u>Long</u> considered the issue, it expressly rejected the position adopted in <u>Wallace</u>.  604 F. Supp. 2d at 122.  In <u>Long</u>, the plaintiffs complained of five IRS lien notices alleged to be unlawfully placed on their house between 1997 and 2003.  <u>Id.</u> at 121.  The Longs claimed they did not become aware of the liens until November 20, 2004, although the liens remained in effect after that date.  <u>Id.</u>  The court therefore found that they had until November 20,

19

2006, to bring their suit, holding that it was "not convinced" that the analysis in <u>Wallace</u> was correct. <u>Id.</u> at 122.  Instead, the <u>Long</u> court adopted the reasoning in <u>Dziura</u>, <u>Macklin</u>, and <u>Nesovic</u> that a claim accrues when a lien attaches and the plaintiff has reason to be aware of the lien.  <u>See</u> <u>id.</u>

The continuing violation theory applied in <u>Wallace</u>  applies only "when the  complained of act 'is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period,' typically because it is only its cumulative impact that reveals its illegality." <u>Long</u>, 604 F. Supp. 2d at 122 (quoting <u>Taylor v. FDIC</u>, 132 F.3d 753, 765 (D.C. Cir. 1997)).  The alleged existence of an ongoing injury does not permit the applicability of the continuing violation doctrine when the tortious conduct has stopped.  <u>Perkins</u>, 697 F.Supp. at 533.  "A lingering effect of an unlawful act is not itself an unlawful act."  <u>Felter</u>, 473 F.3d at 1260.  The IRS only levied once on Keohane's benefits; the lingering monthly effect of that levy is not enough to provide him with a safe harbor in the continuing violations theory.

Furthermore, the court's order in <u>Wallace</u> did not stand.  The case was transferred to the Wyoming district court, where venue was proper.  In its order granting summary judgment to the United States, the Wyoming district court, after noting the issue had not been briefed before the court in the District of Columbia, reconsidered the ruling by the D.C. court and reversed it, finding the D.C. court's opinion to be "clearly erroneous."   <u>Wallace v. United States</u>, No. 08-cv-156-B, [DE #68] at 6 (D. Wyo. April 8, 2009) (Attached as Exhibit C).

<u>Wallace</u> also conflicts with a prior unpublished opinion from the Court of Appeals from the District of Columbia, <u>Mason v. United States</u>, 2001 WL 241799 (D.C. Cir. Feb. 2, 2001), where the court held that the claim accrued on the date appellants were evicted from their home.  The fact that

the appellants in <u>Mason</u> were also denied access to their home the day after eviction, and the next day, and so on, did not continually reset the limitations period for the cause of action every day.  It was the concrete and identifiable event (the eviction) that caused the statute to run, despite the fact that the effects of the eviction would continue to be felt afterwards.

The decision in <u>Claitor</u>, in turn, relied heavily on the Court of Appeals' decision in <u>Page v. United States</u>, 729 F.2d 818, 821 (D.C. Cir. 1984).  This reliance on <u>Page</u> is misplaced.  The court in <u>Page</u> considered a medical malpractice suit against government doctors, whom the plaintiff claimed caused him harm by administering a combination of medications over a nineteen-year period.  <u>Page</u>, 729 F.2d at 819.  The court held that the statute of limitations began to run when the plaintiff knew of both the existence and the cause of the injury.  729 F.2d at 821.  The court found that the statute had not expired only because the harm the plaintiff complained of occurred after he gained the knowledge necessary to pursue his claim, and within two years of his claim.  <u>Id.</u>  Page's injury was "gradual, resulting from the cumulative impact of years of allegedly tortious drug treatment."  <u>Id.</u> at 822.  That is not the case here, as Keohane knew, on June 6, 2005 (based on the SSA Notice and the benefit reduction) that his Social Security payment had been levied.  Because any alleged injury was known to Keohane, and actionable at that time, the continuing violation theory is not applicable to this case.

### B.      Ongoing Effects Do Not Give Life To Continuing Violations.

In <u>Ledbetter v. Goodyear Tire & Rubber Co., Inc.</u>, 550 U.S. 618 (2007), the Supreme Court considered the question of when a cause of action accrued in an employment discrimination case.  The statute at issue in <u>Ledbetter</u> required the plaintiff to file an EEOC charge within 180 days "after the alleged unlawful employment practice occurred."  <u>See</u> 42 U.S.C. § 2000e-2(a)(1) (May 29,

2007).  The Court held[4] that the charging period for each "discrete act or single occurrence," began

at the time of the violation, and that a new charging period did not commence upon the occurrence

of  subsequent  nondiscriminatory  acts  that  entail  adverse  effects  resulting  from  the  past

discrimination.  Ledbetter, 550 U.S. at 628.  Ledbetter argued that each lower paycheck she received

was a discrete act that reset the charging period.  The Court disagreed, holding that "current effects

alone cannot breathe life into [a] prior" cause of action.  Id.  Keohane relies on the same legal theory

to calculate the date of accrual as the unsuccessful plaintiff in Ledbetter when he pleads that "[t]he

right of action under 26 U.S.C. § 7433(a) accrued on July 26, 2007, the date of the last levy on

Plaintiff's Social Security payments."  (Am. Compl. ¶ 9).  There was only a single levy in this case,

however.  It was the IRS levy on the plaintiff's right to receive benefits, as made known to plaintiff

in the May 18, 2005, SSA Notice, and first observed in his June 6, 2005, reduced Social Security

benefit, that gave rise to his cause of action under section 7433.

## II.        Plaintiff Did Not Sustain Actual, Direct Economic Damages.

To recover under section 7433, a plaintiff must sustain "actual, direct economic damages...

as a proximate result of the reckless or intentional or negligent actions of the [IRS] officer or

employee."  26 U.S.C. § 7433(b)(1).  Section 7433 is "the exclusive remedy for recovering damages

resulting from such actions."  26 U.S.C. § 7433(a).  The only "damages" alleged by Keohane are the

communication expenses between himself and the tax clinic that assisted him in filing his tax return

and administrative challenge.  These are not the "actual, direct economic damages" as described in

---

[4] The holding in Ledbetter was abrogated by Pub. L. 111-2, § 2, Jan. 29, 2009, 123 Stat.
5.  This does not mean that Ledbetter is no longer good law on the accrual of statutes of
limitations.  In fact, in deciding Ledbetter, the Court relied in part upon one of its previous
decisions, Lorance v. AT&T Technologies, Inc., 490 U.S. 900 (1989), despite the fact that the
holding in Lorance had been abrogated by Congress at 42 U.S.C. § 2000e-5(e)(2).

subsection 7433(b)(1).  As a result, plaintiff's claim must be dismissed.

A.     **Plaintiff's Alleged Damages Are Administrative Costs and Not Recoverable.**

The plaintiff, Paul Keohane, seeks "an award of his actual damages sustained as a result of having to request the release of the IRS's continuous levy of his Social Security payments."  (Am. Compl. ¶ 34).  Plaintiff alleges that he incurred "at least $765.00 of expenses" in the form of internet charges ($640.00), postage ($100.00), and courier fees ($25.00) to administratively contest the levy on his Social Security payments.  (Am. Compl. ¶ 27).  These are the only alleged "actual, direct economic damages sustained by Plaintiff as a proximate result of the IRS's unauthorized continuous levy."  (Id.).  Plaintiff also seeks litigation costs.  (Am. Compl. ¶ 36).

Keohane's claimed damages do not fall within the category of damages for which Congress has waived the United States' sovereign immunity under section 7433.  "Actual, direct economic damages are actual pecuniary damages sustained by the taxpayer as the proximate result of the reckless or intentional, or negligent, actions of an officer or an employee of the Internal Revenue Service."  26 C.F.R. § 301.7433-1(b)(1).  "Litigation costs and administrative costs are not recoverable as actual, direct economic damages."  26 C.F.R. § 301.7433-1(b)(2).  For the purposes of section 7433, "administrative costs are any costs incurred pursuing administrative relief from the action taken by an officer or employee of the Internal Revenue Service, including costs incurred pursuing an administrative claim for damages." 26 C.F.R. § 301.7433-1(b)(2)(ii) (emphasis added).[5]

_____

[5] Section 7430 allows a prevailing party to collect administrative and litigation costs from the United States.  For costs incurred pursuant to section 7433, however, "[a]dministrative costs, including attorney's fees incurred pursuing an administrative claim... are not recoverable under section 7430."  26 C.F.R. § 301.7433-1(h).  Section 7430 provides no relief from plaintiff's failure to allege any actual, direct economic damages

Plaintiff paid approximately $765.00 for internet access, postage, and courier services to administratively challenge an IRS levy on his Social Security benefits. But there was no need for Keohane to file an administrative claim. He obtained the release of the levy on July 23, 2007, by filing his delinquent 1994 return. (Am. Compl. ¶ 21). Internet access fees, postage, and courier services are not the kind of actual, direct economic damages contemplated by section 7433. Plaintiff incurred those costs in filing his 1994 return and pursuing his administrative claim. Recovery of those costs is barred under the plain language of the regulations. See 26 C.F.R. § 301.7433-1(b)(2)(ii).

### B.  The Proper Forum For Plaintiff's Claim For Administrative Costs Is the United States Tax Court.

Plaintiff's claim also fails because there is no unresolved substantive tax controversy. "[W]hen the substantive tax issues have been resolved at the administrative level in the taxpayer's favor, subject matter jurisdiction over the taxpayer's requests for administrative costs lies with the Tax Court." Wise v. C.I.R., 168 F. Supp. 2d 649, 652 (S.D. Tx. 2001). Keohane never presented a substantive tax controversy in his administrative claim. His demand then was the same as now: reimbursement for communications expenses, not for any money levied on or retained by the IRS as a result of the levy. "A decision granting or denying (in whole or in part) an award for reasonable administrative costs. . . by the Internal Revenue Service, shall be subject to the filing of a petition for review with the Tax Court." 26 U.S.C. § 7430(f)(2). Congress has therefore limited the exercise of jurisdiction over claims for administrative expenses to the Tax Court. There is no provision granting subject matter jurisdiction to the federal district courts where the Service denies a taxpayer's administrative claim for costs.

24

The money seized from plaintiff's Social Security checks was either refunded to him or applied to his uncontested tax debt.  In <u>Glantz v. United States</u>, 1997 WL 718474 (Fed. Cl. Sept. 17, 1997), the Court of Federal Claims explained that when a taxpayer files an administrative claim that does not seek refund of any monies levied by the IRS, but seeks compensation only for costs incurred pursuing an administrative claim, the proper forum for litigating such a claim (assuming it is denied) is the United States Tax Court.  <u>Glantz</u>, 1997 WL 718474 at *3.  Because the money garnished from Keohane's Social Security checks was either refunded (when plaintiff filed his 1994 tax return) or credited toward his undisputed tax liability, there is no tax controversy for the court to consider. Keohane's only administrative claim was for administrative expenses and, upon denial of that claim, his only appeal was to the Tax Court.  <u>See</u> <u>Wise</u>, 168 F. Supp. 2d at 652 (citing <u>Glantz</u>, 1997 WL 718474 at *3); <u>see also</u> 26 U.S.C. §§ 7430(f)(1) and (2).

### III.    Plaintiff Fails To State a Claim Because the IRS Is Permitted To Levy In Excess Of Fifteen Percent On Social Security Benefits Under 26 U.S.C. § 6331(a).

Plaintiff's claim rests upon the theory that an Internal Revenue Service levy on his Social Security benefits violated the 15% cap on continuous levies made under 26 U.S.C. § 6331(h).  While a continuous levy under section 6331(h) on Social Security benefits is subject to the subsection's 15% limit, the levy on Plaintiff's benefits <u>was not a continuous levy</u>. It was not made under subsection (h) and does not implicate the 15% cap.  The statute's text and legislative history show that the cap only applies to continuous levies under section 6331(h).  Conversely, levies <u>not</u> made under subsection (h) – such as the levy here – are not "capped" at 15%.

     **A.**     **The Internal Revenue Service Levied Keohane's Social Security Benefits Pursuant to Section 6331(a), and Was Therefore Entitled To Levy In Excess Of 15% Of the Total Monthly Payment.**

A district court recently confronted the issue whether an IRS levy on Social Security benefits is limited to 15% by section 6331(h).  Hines v. United States, --- F. Supp. 2d ---, 2009 WL 3113238, No. 08-0914 (D.D.C. Sept. 30, 2009).  The court in Hines decided that it was not.  In reaching this result, the court reasoned as follows:

> Plaintiff's right to receive periodic payments for his Social Security retirement benefits was a vested interest.  See 42 U.S.C. § 402(a); Schmiedigen v. Celebrezze, 245 F. Supp. 825, 827 (D.D.C. 1965). The amount of benefits are calculable– they are based on earnings averaged over plaintiff's lifetime and determinable based upon a complex formula.  See 42 U.S.C. § 402 et seq.  The Social Security Administrations ongoing payment of a specific amount of retirement benefits to plaintiff every month therefore was an "obligation[] existing at the time" the levies attached under 26 U.S.C. § 6331(b). The levy appropriately could have been issued under Section 6331(a), and therefore was not limited by the fifteen percent cap.

Hines, 2009 WL 3113238 at *6.

The court also noted that the United States had shown its levies were not continuous levies, but were, in reality, levies based on section 6331(a).  The language of the IRS levy notices tracked the language of 6331(a) in stating that, "[t]his levy requires you to turn over to us this person's property and rights to property (such as money, credits, and bank deposits) that you have or which you are already obligated to pay this person."  Hines, 2009 WL 3113238 at *6.  The IRS levy on Keohane's Social Security benefit contained substantially the same language.  See Notice of Levy on Wages, Salary, and Other Income, dated April 29, 2005, attached as Exhibit D ("This levy requires you to turn over to us (1) this taxpayer's wages and salary that have been earned but not paid

yet, as well as wages and salary earned in the future until this levy is released, and (2) this taxpayer's

<u>other income that you have now or for which you are obligated.</u>")  The levy in this instance created

a requirement to remit to the IRS money owed Keohane in the future.  This is consistent with a levy

under section 6331(a).  Since it was a levy under section 6331(a), the levy on Keohane's Social

Security benefits was never subject to the 15% cap of section 6331(h).

## B.    The Levy Was Not a Continuous Levy Under Section 6331(h).

The IRS levy in this case attached to Keohane's right to receive Social Security benefits.  It

was not a continuous levy because it only attached to his right to property at the time of the levy,

rather than continuously attaching to new rights as they arose.  The text and legislative history of

section 6331(h) indicate that its 15% cap applies only to <u>continuous levies</u>, and the decision to levy

on federal payments is left to Service's discretion.   In this case, the Service did not levy on

Keohane's Social Security benefits under section 6331(h).  Since the levy is not a continuous levy

under subsection (h), the 15% cap does not apply.

The levy here is not a continuous levy merely because it reaches each monthly payment.

Under section 6331(a), tax levies reach both property and <u>rights to property</u> in existence at the time

of levy.  This includes the right to future periodic payments, and did so even prior to the enactment

of 6331(h). <u>See, e.g.</u> <u>In re Kirk</u>, 100 B.R. 85, 89 (Bankr. M.D. Fla. 1989) ("[O]nly one levy was

required to" reach future monthly payments under disability policy).  A levy reaches "obligations

which exist at the time of the levy," and the "right to receive payment [to which levies attach] can

derive from obligations to pay the taxpayer in the future." 26 C.F.R. § 301.6331-1(a).  The difference

between a non-continuous "snapshot" levy and a continuous levy is that the continuous levy will

continue attaching to new property rights as they arise.  <u>United States v. Jefferson-Pilot Life Ins. Co.</u>,

49 F.3d 1020, 1021 (4th Cir. 1993). For example, the non-continuous levy at issue here attached to Keohane's present right to receive Old Age Insurance payments in the future, but if he later qualified for Survivor's Insurance as well, it would not reach his right to receive these benefits because such right arose after the levy was made. Had the levy been a continuous levy under 6331(h), however, it would automatically have extended to Survivor's Insurance payments.

Plaintiff, who qualified for Old Age Insurance, had an existing right to future payments under 42 U.S.C. § 402(a) at the time of the levy, to which right the levy attached. The fact that the benefits were payable after the date of levy does not transform it into a continuous levy, since the obligation to pay already existed and could be captured by a "snapshot" levy. Before 6331(h) allowed continuous levies on non-wage income, courts had already held that the Service's non-continuous levies could reach vested rights to future income, such as annuity payments. Kirk, 100 B.R. at 89. Cf. In re Connor 27 F.3d 365 (9th Cir. 1994) (vested right to pension is "property or right to property" within meaning of Code); In re Wessel, 161 B.R. 155 (Bankr. D. S.C. 1993) (entitlement to future life annuity payments are "right to property."). Pre-1997 cases also held that the Service could levy Social Security benefits, e.g., Smith v. I.R.S., 1991 U.S. App. LEXIS 23139 at * 2 (8th Cir. 1991) (citing 26 U.S.C. § 6334(c)). Thus, the Service could make the non-continuous levy here before 6331(h)'s enactment. As shown below, the subsection did not limit its right to do so. The levy, which was not made under 6331(h), was not subject to its 15% cap.

C.    **Section 6331(h) Permits Continuous Levies, But Does Not Mandate Them, And Only Levies Made Under 6331(h) Are Capped At 15%.**

As explained above, the Service could have made the levy at issue prior to the enactment of section 6331(h). While section 6331(h) permits continuous levies on federal payments and subjects

such levies to a 15% limitation, it does not mandate that all levies on such payments be made under

the subsection and subject to that limitation.  The subsection's plain text gives the Service discretion

to approve a levy under 6331(h), and only makes levies so approved subject to the cap.  It states:

> (h) Continuing levy on certain payments
>> (1) In general
>>> If the Secretary approves a levy under this subsection, the effect of such levy on specified payments to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released.  Notwithstanding section 6334, such continuous levy shall attach to up to 15 percent of any specified payment. . .

The plain language indicates that the 15 percent limit applies to "such continuous levy," that is, a

levy made under subsection (h).  It does state that it applies to other levies.  Further, it expressly

leaves to the Service the discretion to "approve[] a levy under this subsection," and does not state

that all levies on specified payments must be made under 6331(h).

Unless the Service approves a levy as a 6331(h) levy, it will not be subject to the fifteen

percent limit.  A levy reaches "all property and rights to property" not expressly exempted by statute

and exemptions thereto cannot be implied. 26 U.S.C. § 6331(a); <u>Drye v. United States</u>, 528 U.S. 49,

56-57 (1999).  While subsection (h) of section 6331 references a fifteen percent limitation, it states

that this cap applies to "such continuous" levies approved under the subsection, and does not limit

the discretion to approve (or not approve) a levy under the subsection.  The Service may choose not

to invoke 6331(h) when levying on payments that <u>could</u> be levied under the subsection, thus

avoiding its fifteen percent limit.

In addition to <u>Hines</u>, least three courts have interpreted subsection (h) as permissive, holding

that it only expanded the levy power and did not impose a new limitation on the Service's prior right

to levy amounts not otherwise exempted under section 6334. <u>Duran v. I.R.S.</u>, 2009 WL 700518 at

*3-4 (E.D. Cal. 2009); <u>Beam v. United States</u>, 2007 U.S. Dist. LEXIS 42903 at *3 (D. Ore. 2007)

(levy on Social Security benefits not limited to 15%); <u>Marsh</u>, 89 F. Supp. 2d at 1178-1179. <u>Marsh</u>

noted that the statute's language did not expressly repeal section 6331(a)'s broad authority to levy

all property above a fixed exemption specified in section 6334, and declined to find repeal by

implication. 89 F. Supp. 2d at 1180.  This is consistent with <u>Drye</u>'s holding that only express

limitations can limit the levy power.  Subsection (h) lacks such express language.  It cannot be

interpreted as limiting the Service's right - which existed prior to its enactment - to levy all Social

Security benefits not exempted by section 6334.

> D.     **Legislative History Confirms That Congress Intended Use Of Section 6331(h) To Be Discretionary and Did Not Mean To Limit Existing Levy Powers.**

The legislative history further supports the United States' position.  It indicates that Congress

did not intend to require the Service to make levies on "specified payments" solely under subsection

(h), but left the decision to the Service's discretion.  It also shows that the expressed intent of

Congress in enacting section 6331(h) was to increase the potential scope and efficiency of the tax

levy, and not to set new limits on the Service's pre-existing levy power.

Congress did not intend to compel the Service to levy on specified payments under section

6331(h).  Staff of Jt. Comm. on Taxation, <u>Gen. Explanation of Tax Legislation Enacted in 1997</u> at

219 (Comm. Print. 1997) ("Use of a continuous levy is at the discretion of the Secretary.").  In 1998

it clarified that not all levies on "specified payments" were continuous levies under the subsection

(which would subject them to its fifteen percent cap).[6]  The first sentence as enacted in 1997 read, "The effect of a levy on specified payments to or received by a taxpayer shall be continuous..." P. L. 105-34 § 1024(a).  The IRS Restructuring and Reform Act (RRA), P.L. 105-206, added the current wording: "If the Secretary approves a levy under this subsection, the effect of such levy on specified payments to or received by a taxpayer shall be continuous . . ." (emphasis added). Congress expressly clarified that not all levies on specified payments are continuous levies under 6331(h), only those approved as such by the Service.  As explained, section 6331(h) only subjects "such continuous lev[ies]" approved by the Service to the 15% limit.

Further, the legislative history illustrates an intent to expand the Service's levy power and make it easier to levy on federal payments. Cf. Marsh, 89 F. Supp. 2d at 1179 (finding section 6331(h) permissive based partly on Congress' expressed intent for it to increase the scope of the levy power).  There is no discussion of any intent to significantly limit IRS levies on federal payments, which represented eighteen percent of gross domestic product. See Office of Mgt. & Budget, Budget of the United States Government, Fiscal Year 1998: A Citizen's Guide to the Budget, at 2 (1997). The Administration proposed subsection (h) to Congress in 1996, and again in its 1998 budget proposal. See Tax Analysts, Budget Briefing on Clinton Tax Proposals, 97 Tax Notes Today 69-8 (Feb. 10, 1997).  It was presented as a way to increase proceeds, Office of Mgmt. & Budget, Budget of the United States Government, 1998 Fiscal Year: Analytical Perspectives 55, 61 (1997), Congr. Budget Office, An Analysis of the President's Budgetary Proposals for FY 1998 44 (1997), and Congress viewed it as such. See H.R. Rep. No. 105-148, at 478 (1997) (reasons for enactment of

---

[6] The amendment was introduced in the Tax Technical Corrections Act of 1997, H.R. 2645, shortly after enactment of the 1997 Act.  H.R. 2645 made changes "necessary to reflect the intent of the 1997 act." H.R. Rep. No. 105-148, at 43 (1997).  It was merged into the 1998 RRA.

subsection (h) include "increased collections of taxes").  The legislative history describes it as permitting expanded and procedurally easier levies.  See id. (new provision "will substantially ease the administrative burdens of collecting taxes.").  It does not show an intent to further limit existing levy powers of the IRS.

The flat rate cap (and continuous nature of the 6331(h) levy) was described as making an IRS levy procedurally easier by permitting the Service to electronically report delinquent taxpayers to the Treasury's Financial Management Service, and thereafter obtain fifteen percent of federal payments due to it without having to compute each individual's particular exemption under section 6334. Fed. Refunds, State Debts, Hg. Before the Subcomm. on Oversight of the H. Comm. on Ways & Means, 105th Cong. (1997) (Stmt. of Cynthia G. Beerbower, Deputy Asst. Sec. of the Treasury for Tax Policy).  The section 6334 exemption is modest; apart from certain limited classes of property, the Service can levy 100% of individual taxpayers' income for the year in excess of the standard deduction and personal exemptions.  See 26 U.S.C. §§ 6334(a)(9) and (d); Internal Revenue Service Tax Time 1998 at 4 (Jan. 1998).  Further, all of a business taxpayer's income is potentially subject to levy.  While having the option to make a streamlined levy subject to a fifteen percent cap could be expected to increase revenues, requiring the cap for all levies on federal payments, most of which were already subject to the levy power, would have significantly restricted it.  Yet the legislative history shows no discussion of the effects of such a restriction, consistently referring only to increased levy proceeds.  In fact, in presenting the proposal to Congress, the Administration emphasized that:

> Congress has always permitted Social Security payments to be subject to levy, and the Administration's proposal would not change current law in this regard. . . [T]he only intended consequence of this proposal is to reduce paperwork burdens. . ."

32

<u>Tax Debt Collection Issues, Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways</u>

<u>& Means</u>, 104th Cong. (1996) (Beerbower Statement) (emphasis added).

In sum, the history shows that the addition of subsection (h) was not meant to preclude the Service from levying under section 6331(a).  Both the 1998 amendment, and the lack of any expression of an intent to limit preexisting levy powers, show that Congress did not mean to force the Service to levy under 6331(h), in effect creating an eighty-five percent exemption for all federal payments.

### **Conclusion**

Plaintiff brings his claim outside the statutory period and advances a cause of action that states no statutory damages.  Furthermore, the legal theory underlying plaintiff's suit, that the IRS may only levy a maximum of fifteen percent of a taxpayer's Social Security benefits, is incorrect as a matter of law.  For the foregoing reasons, this Court should dismiss this suit for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted.

DATE: November 13, 2009               Respectfully submitted,

                                                   JEFFREY A. TAYLOR
                                                   United States Attorney

                                               /s/ Robert J. Gallagher
                                               ROBERT J. GALLAGHER
                                               Trial Attorney, Tax Division
                                               U.S. Department of Justice
                                               Post Office Box 227
                                               Ben Franklin Station
                                               Washington, DC 20044
                                               Telephone: (202) 616-8994
                                               Facsimile:   (202) 514-6866
                                               Email: Robert.J.Gallagher@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that the foregoing BRIEF IN SUPPORT OF UNITED

STATES' MOTION FOR SUMMARY JUDGMENT was served on November 13, 2009,

electronically by ECF, to:

>Alan J.J. Swirski
>Skadden Arps Slate Meagher & Flom LLP
>1440 New York Avenue, NW
>Washington, DC 20004-2634
>Telephone: (202) 371-7610
>Facsimile:  (202) 661-0510
>Email: alan.swirski@skadden.com
>*Plaintiff's Counsel*
>
>Armando Gomez
>Skadden Arps Slate Meagher & Flom LLP
>1440 New York Avenue, NW
>Washington, DC 20004-2634
>Telephone: (202) 371-7868
>Email: armando.gomez@skadden.com
>*Plaintiff's Counsel*
>
>David William Foster
>Skadden Arps Slate Meagher & Flom LLP
>1440 New York Avenue, NW
>Washington, DC 20005
>Telephone: (202) 371-7626
>Facsimile:  (202) 661-0586
>Email: david.foster@skadden.com
>*Plaintiff's Counsel*

And by First Class U.S. Mail, postage prepaid, to:

>Diana Lynn Leyden
>University of Connecticut School of Law Tax Clinic
>65 Elizabeth Street
>Hartford, CT 06105
>Telephone: (860) 570-5461
>*Plaintiff's Counsel*

                                                    /s/ Robert J. Gallagher