**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PAUL KEOHANE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No.:  1:08-cv-02081-HHK** |
| | ) | |
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT .................................................................................................................... 6

I.  THE CLAIM ARISES FROM THE COLLECTION OF FEDERAL TAX ................................ 7

II.  IN LEVYING CONTINUOUSLY UPON MORE THAN 15 PERCENT OF MR.
    KEOHANE'S SOCIAL SECURITY BENEFITS, AN OFFICER OR EMPLOYEE OF THE
    IRS INTENTIONALLY DISREGARDED 26 U.S.C. § 6331(h). ................................. 7

    A.  Section 6331(h) Prevents the IRS from Levying with Continuous Effect, Under
        Any IRS Program, in Excess of 15 Percent on a Taxpayer's Social Security
        Benefits. .................................................................................................................. 9

    B.  The IRS's Levy of Mr. Keohane's Social Security Payments Had the Continuous
        Effect of Collecting in Excess of 15 Percent of His Social Security Payments. ......... 15

III.  MR. KEOHANE SUSTAINED RECOVERABLE DAMAGES AS A RESULT OF THE
     IRS'S WRONGFUL LEVY. ...................................................................................... 16

IV.  MR. KEOHANE EXHAUSTED HIS ADMINISTRATIVE REMEDIES AND TIMELY
    FILED SUIT. ............................................................................................................ 18

    A.  Mr. Keohane Exhausted His Administrative Remedies. ............................................ 19

    B.  Mr. Keohane Brought this Action within the Statute of Limitations.......................... 20

        i.   The Statute Began to Run on the Date of the Last Wrongful Collection
             Action............................................................................................................... 20

        ii.  Mr. Keohane Brought this Action Within Two Years of When He Knew
             or Reasonably Should Have Known of the IRS's Wrongful Conduct. ............ 22

V.  THE COURT SHOULD AWARD MR. KEOHANE HIS REASONABLE ATTORNEY'S
    FEES AND OTHER COSTS....................................................................................... 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

## <u>CASES</u>

*Baker v. Commissioner*, 787 F.2d 637 (D.C. Cir. 1986)..................................................24

*Bright v. United States*, 446 F. Supp. 2d 339 (E.D. Pa. 2006)..................................22-23

*Brown v. GSA*, 425 U.S. 820 (1976) ..............................................................................14

*Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc.*, 513 F.2d 407 (D.C.
    Cir. 1975) ...............................................................................................................20

\*    *Davis v. United States*, 569 F. Supp. 2d 91 (D.D.C. 2008) ...........................................21

\*    *EC Term of Years Trust v. United States*, 550 U.S. 429 (2007) ............................14, 22

*Brown v. GSA*, 425 U.S. 820 (1976) ..............................................................................14

*FCC v. Schreiber*, 381 U.S. 279 (1965)..........................................................................24

*Feemster v. BSA Ltd. P'ship*, 548 F.3d 1063, 1067 (D.C. Cir. 2008) ...........................7

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ................................................14

*Hines v. United States*, Civil Action No. 08-0914 (PLF), 2009 WL 3113238 (D.D.C.
    Sept. 30, 2009) ......................................................................................................14

*Leining v. United States*, No. 3:96cv00992(AVC), 1996 WL 857913 (D. Conn. Dec. 30,
    1996) ...................................................................................................................9, 10

*Long v. United States*, 604 F. Supp. 2d 119 (D.D.C. 2009).........................................21

*Mathews v. de Castro*, 429 U.S. 181 (1976).....................................................................7

*Norwest Bank Minnesota National Association v. FDIC*, 312 F.3d 447 (D.C. Cir. 2002)............15

*Page v. United States*, 729 F.2d 818 (D.C. Cir. 1984).................................................21

*Shane v. United States*, Civil Action No. 07-577(RBW), 2008 WL 101739 (D.D.C. Jan.
    9, 2008) .................................................................................................................20

*United States v. Chemical Foundation, Inc.*, 272 U.S. 1 (1926) ...................................24

*United States v. Cleveland*, 507 F.2d 731 (7th Cir. 1974)............................................11

*United States v. Cleveland*, Nos. 93 C 1767, 93 C 1768, 1994 WL 411376 (N.D. Ill. Aug. 3, 1994) ...................................................................................................................9

*United States v. Olender*, No. 8:07-cv-00930-EAK-EAJ, 2007 WL 2714105 (M.D. Fla Sept. 17, 2007) .............................................................................................................19

\*    *Wallace v United States*, 557 F. Supp. 2d 100 (D.D.C. 2008)......................................21

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371 (2003) .....................................................................................................................7-8

## STATUTES & REGULATIONS

\*    26 C.F.R. § 301.6331-1.............................................................................................11

\*    26 C.F.R. § 301.7433-1 ...................................................................................... *passim*

\*    26 U.S.C. § 6331 ................................................................................................ *passim*

\*    26 U.S.C. § 6334.................................................................................................9, 10

\*    26 U.S.C. § 7430................................................................................................24, 25

\*    26 U.S.C. § 7433 ............................................................................................... *passim*

42 U.S.C. § 407.........................................................................................................10

Fed. R. Civ. P. 8 ........................................................................................................20

Fed. R. Civ. P. 15 ......................................................................................................20

Fed. R. Civ. P. 56...................................................................................................1, 7

L. Civ. R. 7(h) .............................................................................................................1

## OTHER AUTHORITIES

\*    Department of the Treasury, *General Explanations of the Administration's Revenue Proposals* (Feb. 1997)..........................................................................................12

\*    H.R. Rep. No. 220, 105th Cong., 1st Sess., *reprinted in* 1997-4 C.B. (Vol. 2) 1457....................8

I.R.M. 5.11.6.1.1 (1999) ............................................................................................12

I.R.M. 536(14) (1996)...............................................................................................................12

\*     I.R.S. Chief Couns. Adv. 199948004 (Dec. 3, 1999) ........................................... *passim*

\*     I.R.S. NSAR 11574 (July 16, 2000) ................................................................... *passim*

\*     S. Rep. No. 33, 105th Cong., 1st Sess., *reprinted in* 1997-4 C.B. (Vol. 2) 1067 ................... 13-14

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 56(a) and Local Civil Rule 7(h), Plaintiff Paul Keohane moves for summary judgment on all of his claims for the following reasons, as more fully described herein:

- In 1997, Congress granted the IRS a powerful new tool to collect unpaid taxes: the ability to institute continuous levies on Social Security payments. Congress sought to ensure that this new tool would not undermine its commitment to the safety net provided by the Social Security program by preventing the IRS from levying continuously in excess of 15 percent of an individual's Social Security payments. *See* 26 U.S.C. § 6331(h). In an apparent effort to serve short-term revenue needs and cut corners administratively, the IRS has deemed Congress's limitation "superfluous" and imposed continuous levies far in excess of 15 percent of Social Security payments. *See* I.R.S. NSAR 11574, 2000 WL 34423459 (July 16, 2000).

- The IRS instituted a single levy that continuously collected well over 15 percent of Plaintiff Paul Keohane's monthly Social Security benefits. The levy was therefore unlawful. Mr. Keohane brings this action pursuant to 26 U.S.C. § 7433 to recover his damages from contesting the IRS's wrongful levy and to vindicate the protection that Congress established for the elderly and the disabled (even those who are delinquent on their tax payments) in 1997.

- Mr. Keohane asserts two separate and distinct types of damages in this action. First, he seeks recovery of postage and courier fees he expended in contesting the unlawful levy. Those expenses are "actual, direct economic damages," not

1

administrative costs.  Second, Mr. Keohane seeks recovery of the costs of this action, which are explicitly defined as recoverable "damages" both by 26 U.S.C. § 7433(b)(2) and 26 C.F.R. § 301.7433-1(d)(5).

- The government has argued that although section 6331(h) plainly prohibits "continuous levies" on more than 15 percent of Social Security payments, the IRS is free to institute "levies with continuous effect" in excess of 15 percent of Social Security payments.  *See* I.R.S. Chief Coun. Adv. Mem. 199948004, 1999 WL 1100099 (Oct. 15, 1999).  This exercise in semantics flatly contradicts section 6331(h), contravenes numerous canons of statutory construction, and undermines clearly expressed congressional intent.

- The United States further contends that, unless a taxpayer contests the levy administratively and in court within two years of the first collection, the statute of limitations allows the IRS to continue the effect of a continuous wrongful levy forever.  The United States is again incorrect.  Because this case falls squarely within the continuing violation doctrine, the statute did not begin to run until the time of the final wrongful collection from Mr. Keohane's Social Security payments.  Mr. Keohane's action is timely because he brought it within two years of the date that the IRS stopped collecting in excess of 15 percent of his monthly Social Security payments.  In the alternative, Mr. Keohane's action is also timely because he brought it within two years of learning that the IRS was wrongfully collecting his payments through a single continuous levy rather than through regular one-time levies.

- The Court should award Mr. Keohane damages and litigation costs, including attorney's fees, to compensate Mr. Keohane for the United States' unlawful collection action. Although the damages Mr. Keohane is seeking to recover are modest, the principle at stake is not. Mr. Keohane seeks a judgment that vindicates the limits that Congress set on the IRS's levy authority.

## STATEMENT OF FACTS

In 1994, Paul Keohane, a United States citizen, worked and earned income in Jakarta, Indonesia. *See* Stipulation of Undisputed Facts[1] ("Stip.") ¶¶ 1-2. However, he did not timely file a federal income tax return for that taxable year. *Id.* The Internal Revenue Service ("IRS") prepared a substitute federal income tax return for Mr. Keohane's 1994 taxable year, and assessed a deficiency totaling $18,903.00 against Mr. Keohane on October 19, 1998. *Id.* ¶ 3. The IRS credited Mr. Keohane with withheld income tax of $8,273.00, which left a deficiency of $10,630.00. *Id.* ¶ 4.

In order to collect the income tax that it had assessed, the IRS sent, from 2002 to 2002, to Mr. Keohane's last known address four notices of intent to levy. *Id.* ¶ 6. Mr. Keohane timely filed joint tax returns with his wife Juat C. Lim for the tax years from 1998 to 2004, but Mr. Keohane never received the notices of intent to levy. *Id.* ¶¶ 5-6. Instead, Mr. Keohane first learned that his Social Security benefits would be subject to an IRS levy when he received a letter from the Social Security Administration shortly after May 18, 2005. *Id.* ¶ 10; *id.* Ex. A. The letter did not inform Mr. Keohane of the nature or duration of the levy, the legal authority the IRS claimed for it, or when the seizure of his Social Security payments would cease. *See id.*

---

[1]     The parties filed a joint Stipulation of Undisputed Facts on October 15, 2009. *See* Doc. No. 17. All facts material to resolution of Mr. Keohane's motion for summary judgment can be found in that stipulation.

("The IRS will take $451.90 from each monthly payment to collect what you owe.").  It merely told him that, for the indefinite future, the IRS would be seizing nearly forty percent of his Social Security benefits.

Shortly thereafter, in June 2005, the IRS began to levy Mr. Keohane's Social Security payments in the amount of $451.90 each month.  *Id.* ¶ 8.  The levy proceeded like clockwork.  Every month for the next twenty-seven months, the IRS collected $451.90 from Mr. Keohane's Social Security check – from June 6, 2005 until July 26, 2007.  *See id.* ¶ 8.  The $451.90 that was collected each month constituted between thirty-seven and forty percent of Mr. Keohane's monthly Social Security benefits.[2]  *See id.* ¶ 16.

Mr. Keohane knew that the IRS was taking $451.90 from his monthly Social Security check, and he knew that $451.90 constituted far in excess of fifteen percent of his benefits.  But he did not learn the way in which the IRS was executing the levy until much later, sometime after December 4, 2006.  *Id.* ¶ 18.  The IRS could lawfully have executed separate paper levies each month to collect the taxes Mr. Keohane owed, but it did not do so.  *Id.*  Instead, it relied on the continuing effect of the single paper levy issued back in 2005.  *Id.* ¶ 9.  That single levy made it possible for the IRS to seize a large portion of Mr. Keohane's Social Security benefits each month without any additional action on its part or any additional notice to Mr. Keohane.  *Id.* ¶ 9.

In 2006, Mr. Keohane contacted the University of Connecticut Law School Tax Clinic (the "Tax Clinic") to request pro bono assistance obtaining relief from the monthly levy of

---

[2]     Mr. Keohane's monthly Social Security payments, before the levy, in 2005 were $1,135.00, in 2006 were $1,181.00, and in 2007 were $1,220.00.  *Id.* ¶ 15.

4

such a large portion of his Social Security benefits.[3]  *Id.* ¶ 19.  Mr. Keohane does not have internet access at his home.  *Id.* ¶ 20.  In order to correspond with the Tax Clinic to seek help with obtaining relief from the levy, he incurred internet access charges at a local internet cafe and postage and courier fees of at least $23.55.  *Id.* ¶¶ 20-22.  These costs were the proximate result of the IRS's levying in excess of 15 percent of Mr. Keohane's Social Security payments.  *Id.* ¶ 23.

On May 2, 2007, with the assistance of the Tax Clinic and a pro bono accountant, Mr. Keohane and his wife Juat C. Lim finally filed their 1994 tax return.  *Id.* ¶ 12.  Even after the IRS's imposition of interest and penalties, Mr. Keohane's tax liability for 1994 was far less than the IRS had levied.  *See id.* ¶ 12.  So on July 23, 2007, the IRS released the levy and refunded the excess $8,947.87 it had levied to Mr. Keohane.[4]  *Id.* ¶ 13.  Mr. Keohane does not dispute either the ultimate calculation of his 1994 tax liability or that the IRS correctly returned the excess amount it had levied.

Around November 27, 2007, Mr. Keohane filed an administrative claim for the damages he had incurred in seeking relief from the levy.  *Id.* ¶ 24.  The claim explained that 26 U.S.C. § 6331(h) prevents the IRS from instituting levies with the continuous effect of collecting in excess of fifteen percent of an individual's Social Security benefits, and therefore that the levy on Mr. Keohane's Social Security benefits had been unlawful.  *Id.*   The IRS returned the claim

---

[3]  The Tax Clinic is a legal clinic that provides pro bono assistance to low-income taxpayers.

[4]  The fact that a single levy resulted in collection of $451.90 from Mr. Keohane's Social Security payments for twenty-seven months demonstrates that it had "continuous effect." A further indication that the levy had "continuous effect" was that it continued even after the IRS released it.  After formally releasing the levy on July 23, 2007, the IRS again levied $451.90 from Mr. Keohane's Social Security payments on July 26, 2007.  *Id.* ¶ 14. (Upon Mr. Keohane's complaint, the IRS refunded this final wrongful levy, with interest, a few weeks later.  *See id.*)

for Mr. Keohane to substantiate his damages, and Mr. Keohane resubmitted his claim around January 4, 2008 with documentation of his damages.  *Id.* ¶¶ 25-26.  On or about May 28, 2008, the IRS denied the administrative claim on the grounds that it did not believe it had violated the Internal Revenue Code (*i.e.*, that its continuous levy was not unlawful) and that in any event, it deemed Mr. Keohane's administrative claim untimely.  *Id.* ¶ 27.

On December 4, 2008, Mr. Keohane caused to be filed his Complaint in this action and caused to be paid a filing fee of $350.00 to Clerk of this Court.  *Id.* ¶¶ 28-29.  The Complaint alleged that the IRS's levy of in excess of fifteen percent of Mr. Keohane's Social Security benefits was unlawful and sought damages for the IRS's wrongful levy, as well as attorney's fees.  In April 2009, Mr. Keohane filed the First Amended Complaint, which asserted the same claims as the Complaint filed on December 4, 2008.

## ARGUMENT

26 U.S.C. § 6331(h) means what it says:  The IRS cannot continuously levy in excess of 15 percent of a taxpayer's Social Security payments.  Yet the IRS intentionally and continuously levied nearly forty percent of Mr. Keohane's Social Security payments for over two years.  Mr. Keohane has therefore proved all of the elements of his claim under 26 U.S.C. § 7433.[5]  First, the IRS's levy of Mr. Keohane's Social Security payments was in connection with the collection of federal income tax.  Second, the IRS intentionally disregarded the Internal Revenue Code by continuously levying in excess of 15 percent of his Social Security payments.  Third, Mr. Keohane sustained recoverable damages from the IRS's wrongful collection action.

The United States' asserted affirmative defenses are without merit.  Mr. Keohane's action is timely, and, as explained above, Mr. Keohane has sustained recoverable damages.

---

[5]    All section references in this memorandum are to the Internal Revenue Code, Title 26 of the United States Code (2006).

The parties have stipulated to all relevant facts; no genuine issues of material fact remain.  Mr. Keohane is therefore now entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Feemster v. BSA Ltd. P'ship*, 548 F.3d 1063, 1067 (D.C. Cir. 2008) (affirming grant of summary judgment to plaintiff).  The Court should also award Mr. Keohane his attorney's fees and reasonable other costs.

## I.   THE CLAIM ARISES FROM THE COLLECTION OF FEDERAL TAX.

The basis of this action was the collection of federal income tax.  The IRS determined that Mr. Keohane owed federal income tax in the amount of $18,903 and assessed tax in that amount on October 19, 1998.  Stip. ¶ 3.  To remedy the tax deficiency, the IRS levied his monthly Social Security payments in the amount of $451.90 starting on June 6, 2005 and ending on July 26, 2007.  *Id.* ¶ 8.  Mr. Keohane does not challenge the assessment of tax that the IRS ultimately determined was due; his exclusive claim in this action is that the IRS violated the Internal Revenue Code by collecting it through a continuous levy exceeding 15 percent of his Social Security payments.

## II.   IN LEVYING CONTINUOUSLY UPON MORE THAN 15 PERCENT OF MR. KEOHANE'S SOCIAL SECURITY BENEFITS, AN OFFICER OR EMPLOYEE OF THE IRS INTENTIONALLY DISREGARDED 26 U.S.C. § 6331(h).

The safety net that Social Security provides for senior citizens has become a key element of the American social compact.  In enacting and expanding the Social Security program, Congress's "primary objective was to provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old age." *Mathews v. de Castro*, 429 U.S. 181, 185-86 (1976).[6]  Senior citizens, especially those of limited means

---

[6]   There are two types of payments under the Social Security Act, Old-Age, Survivors, and Disability Insurance ("OASDI") and Supplemental Security Income ("SSI").  *See Wash.*

likely to rely heavily on Social Security, from time to time fall in arrears on their tax obligations. For those senior citizens who have retired or are no longer able to work, Social Security is often the sole source of income. Therefore, Social Security payments are often the only stream of income upon which the IRS can levy to fulfill any tax deficiencies. These realities left Congress to balance two competing policy objectives—ensuring a basic minimum living standard for senior citizens and protecting the public fisc.

Congress made explicit how it chose to balance those two objectives in 26 U.S.C. § 6331. Section 6331(h) permits the IRS to institute levies whose "effect . . . shall be continuous" from the date of the first levy on certain specific payments such as Social Security,[7] but only up to 15 percent of the payments:

(h) Continuing levy on certain payments.--

(1) In general.--If the Secretary approves a levy under this subsection, *the effect of such levy on specified payments to or received by a taxpayer shall be continuous* from the date such levy is first made until such levy is released. Notwithstanding section 6334, *such continuous levy shall attach to up to 15 percent of any specified payment due to the taxpayer.*

(emphasis added.) Sections 6331(a) and 6331(c) permit the IRS to levy a higher percentage of Social Security payments, but only using levies that do not have continuous effect. This system

---

*State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375-76 (2003). Whereas OASDI payments are made to retired and disabled individuals based on their past earnings, SSI payments are made solely to disabled individuals whose current income falls below a certain threshold. The payments at issue in this case were OASDI payments, and are referred to herein as "Social Security" benefits or payments.

[7]   Section 6331(h)(2)(A) defines a "specified payment" as "any Federal payment other than a payment for which eligibility is based on the income or assets (or both) of a payee." As the House Conference Report on section 6331(h) recognized, Social Security payments meet this definition. *See* H.R. Rep. No. 220, 105th Cong., 1st Sess. 549, *reprinted in* 1997-4 C.B. (Vol. 2) 1457, 2019 (Conf. Rep. to the Taxpayer Relief Act of 1997, Public Law 105-34 (the "1997 Act")), *available at* 1997 WL 451277 ("For example, Social Security payments, which are subject to levy under present law, would become subject to continuous levy.").

reflects the Congressional intent of balancing the need to provide a social safety net with the need to ensure that the IRS can collect revenue.  It sets a baseline maximum of 15% for continuous levies that do not require further IRS action and forces the IRS to make an administrative judgment each month if it wants to collect more than that.

The Chief Counsel of the IRS has concluded that the 15 percent limitation imposed on levies with continuous effect by section 6331(h) is "superfluous," and the IRS has intentionally disregarded it.  *See, e.g.*, I.R.S. NSAR 11574, 2000 WL 34423459; *see also* I.R.S. Chief Couns. Adv. 199948004, 1999 WL 1100099.  More specifically, the IRS contends that it has established two programs, the paper levy program using Form 668-W for one-time levies and the Federal Payment Levy Program ("FPLP") for continuous levies.  The IRS concedes that it cannot use the FPLP to levy in excess of 15 percent of an individual's Social Security payments, but it contends that it may initiate a single paper levy with Form 668-W that has exactly the same continuous effect—what it calls "a single levy with continuous effect."  This Court should not indulge the IRS's wordplay.

**A.   Section 6331(h) Prevents the IRS from Levying with Continuous Effect, Under Any IRS Program, in Excess of 15 Percent on a Taxpayer's Social Security Benefits.**

Congress enacted section 6331(h) as part of the 1997 Act.  Prior to that Act, it was settled law that the IRS could levy on Social Security benefits pursuant to its general authority to levy on property, which is found in section 6331(a).  *See, e.g.*, *Leining v. United States*, No. 3:96cv00992(AVC), 1996 WL 857913, at *2 (D. Conn. Dec. 30, 1996) ("[S]ocial security benefits are subject to levy by the IRS."); *United States v. Cleveland*, Nos. 93 C 1767, 93 C 1768, 1994 WL 411376, at *3 (N.D. Ill. Aug. 3, 1994) (same).  Section 6331(a) provided the authority for the IRS to levy generally, and section 6334(a) exempted certain property from the

IRS's levy authority.   The list of exempt property in subsection (a) did not include Social Security payments, and section 6334(c) made clear that Social Security payments were not exempt from levy:[8]

> (c) No other property exempt.--Notwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a).

Using this authority, the IRS could and regularly did levy up to 100% of an individual's Social Security benefits.[9]   For example, in *Leining*, the IRS had levied 100% of the plaintiff's Social Security benefits in one month and collected approximately 50% of those benefits in later months.   *See* 1996 WL 857913, at *1.

The IRS was and is free to collect a large percentage of a taxpayer's Social Security benefits each month, if it executes a new levy for each collection.

> (c) Successive seizures.--Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

26 U.S.C. § 6331(c).   The IRS, however, likely viewed executing a new levy each month as an administrative burden.

Prior to 1997, it was not clear if the IRS could collect a taxpayer's Social Security benefits in multiple months without imposing a new levy in each month.   The general rule is that

---

[8]   This clarification was essential because a provision of the Social Security Act, 42 U.S.C. § 407 (2006) (section 207 of the Social Security Act), provides that Social Security payments are exempt from levy unless another provision of law overrides section 407 by explicit reference.

[9]   Under section 6334(d), a portion of an individual's income (wages, salary, and other income) is exempt from levy.   Thus, if Social Security income is the individual's only income, the IRS cannot institute a one-time levy on 100% of Social Security benefits.

a levy does not operate to seize property acquired after the date of the levy.  *See* 26 U.S.C. § 6331(b) ("[A] levy shall extend only to property possessed and obligations existing at the time thereof.").

Prior to 1997, there were two exceptions to the general rule, neither of which is applicable here.  First, section 6331(e), enacted in 1982, permitted the IRS to execute levies that had continuous effect on salaries and wages:

> (e) Continuing levy on salary and wages.--The effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released under section 6343.

But, as the IRS recognized, Social Security benefits are neither salary nor wages.  *See* 26 C.F.R. § 301.6331-1(b)(1) ("For this purpose, the term *salary or wages* includes compensation for services paid in the form of fees, commissions, bonuses, and similar items."); *see also* I.R.S. Chief Couns. Adv. 199948004, 1999 WL 1100099 (conceding that section 6331(e) does not apply to Social Security benefits).  So section 6331(e) cannot justify the levy on Mr. Keohane's Social Security benefits.

Second, the IRS could levy on obligations existing at the time of the levy, even if the subject of the levy did not yet have possession of the property.  *See* 26 U.S.C. § 6331(b). The Treasury Regulations provide that "[o]bligations exist when the liability of the obligor is fixed and determinable."  26 C.F.R. § 301.6331-1(a)(1).  The Internal Revenue Manual[10] in effect when the 1997 Act was being considered ("1997 IRM") was conspicuously silent on whether Social Security benefits were fixed and determinable.  In its general discussion of employee benefits, the 1997 IRM provided that "[a] notice of levy on benefit income attaches

---

[10]     "The Internal Revenue Manual is an official compilation of procedures and instructions pertaining to the operations of the Internal Revenue Service." *United States v. Cleveland*, 507 F.2d 731, 736 n.9 (7th Cir. 1974).

future payments if the taxpayer has a current fixed and determinable right to those payments."
*See* I.R.M. 536(14).1(3) (Oct. 30, 1996), *available at* 1997 WL 34656385.   The Manual
explicitly stated that Civil Service Retirement System Benefits and Retirement Benefits for
Military Personnel were fixed and determinable, but it was silent as to whether Social Security
benefits were fixed and determinable.   *Compare* 1997 I.R.M. 536(14).221(2) (Civil Service
Retirement System benefits fixed and determinable) *and id.* 1997 I.R.M. 536(14).222(2) (same
for Military Personnel Retirement benefits) *with* 1997 I.R.M. 536(14).21 (no such statement for
Social Security benefits).   The 1999 Internal Revenue Manual seems to concede that Social
Security payments are neither "fixed" nor "determinable."   In its discussion of levies on Social
Security payments, it concedes that "the taxpayer's eligibility for benefits could change."   1999
I.R.M. 5.11.6.1.1(4), *available at* 1999 WL 34860065.   It then gives an example:   "The taxpayer
may get full benefits when the levy is served.   Later, the person starts working.   This may reduce
the benefits . . . ."   *Id.*   If eligibility for benefits can change, they are neither fixed nor
determinable.

   The best evidence of the uncertainty surrounding the IRS's authority to levy
continuously is the Treasury Department's own explanation of the legislative proposal that
became the 1997 Act.   In February 1997, the Treasury Department issued an explanation of the
changes that it sought in legislation that year.   *See* Department of the Treasury, *General
Explanations of the Administration's Revenue Proposals* (1997) (attached as Exhibit 1 to
Declaration of Armando Gomez).   The Treasury Department explained that "[u]nder section
6331, certain kinds of non-means tested, recurring Federal payments are subject to levy by the
IRS to collect taxes, but the levy must be served repeatedly by the IRS in order to intercept each
(or part of each) payment."   *Id.* at 88.   If the IRS already had the authority to institute such levies,

12

there would have been no need for the Treasury Department to request that authority in its legislative proposals.

Additional evidence of the uncertainty surrounding the IRS's authority to levy continuously on Social Security payments before enactment of section 6331(h) is the IRS's own internal communications. The 1997 Act allowed the IRS to institute continuous levies pursuant to section 6331(h)(1) only if the Treasury Secretary authorized such levies, and he did not do so for several years after 1997. Therefore, for several years after 1997, the IRS's authority to institute continuous levies remained unchanged. In 1999, the IRS Chief Counsel's Office received a question from Division Counsel whether the IRS had the authority to collect future Social Security benefits with a single levy. *See* I.R.S. Chief Coun. Adv. 199948004, 1999 WL 1100099. Notwithstanding its affirmative answer, it received the same question again the next year. *See* I.R.S. NSAR 11574, 2000 WL 34423459. If the IRS's authority to continuously levy on Social Security payments were well established, the Treasury Department would not have needed to ask for new authority, the 1997 Internal Revenue Manual would have addressed such continuous levies, and the field agents would not have needed to ask the Chief Counsel for guidance.

Congress entered this area of uncertainty when it considered the provisions of the 1997 Act, section 1024(a) of which became 26 U.S.C. § 6331(h). The Senate Finance Committee Report explained that, under section 6331(h)(1), "Social Security payments, which are subject to levy under present law, would become subject to continuous levy." S. Rep. No. 33, 105th Cong., 1st Sess. 156, *reprinted in* 1997-4 C.B. (Vol. 2) 1067, 1236, *available at* 1997 WL 353020. This new authority for the IRS would "substantially ease the administrative burdens of collecting taxes by levy." *Id.* at 155, 1997-4 C.B. (Vol. 2) at 1235. Further, the

report provides that the "levy would attach up to 15 percent of any specified payment due the taxpayer." *Id.* at 156, 1997-4 C.B. (Vo. 2) at 1236.

Section 6331(h) thus clarified an area of uncertain authority for the IRS.  Courts "generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988).  In this context, this Court should conclude that Congress was aware of the uncertainty surrounding continuous levies on Social Security payments and that Congress spoke definitively on the issue in section 6331(h).  Further, the Supreme Court has repeatedly "held that a precisely drawn, detailed statute pre-empts more general remedies." *EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007) (quoting *Brown v. GSA*, 425 U.S. 820, 834 (1976)).  Section 6331(h) has provided the IRS with a precisely drawn, detailed extra-judicial remedy for delinquent tax payments in section 6331(h); that remedy preempts resort by the IRS to more general remedies.

The United States has contended that, notwithstanding section 6331(h), the general authority to levy granted by sections 6331(a) and (e) allows the IRS to impose continuous levies on more than 15 percent of a taxpayer's Social Security benefits.[11]  According to the United States, either (1) Social Security benefits are wages or salaries, and thus subject to continuous levy under section 6331(e) or (2) they are fixed and determinable and thus subject to a "single levy with continuous effect" under section 6331(a).  Both of these arguments ignore the effect of section 6331(h), and they are therefore invalid.

---

[11]    One Court in this District recently accepted this argument.  *See Hines v. United States*, Civil Action No. 08-0914 (PLF), 2009 WL 3113238 (D.D.C. Sept. 30, 2009).  Mr. Keohane respectfully submits that the plaintiff in *Hines* did not offer the Court a full explanation on why this argument is incorrect.  Instead, the plaintiff in *Hines* argued that the government's summary judgment motion should have been denied because its paragraphs were not numbered and because he was a "nontaxpayer" exempt from taxation.  *See* Doc. No. 28-2, in *Hines v. United States*.

14

For the reasons explained above, Social Security benefits are neither wages or salaries nor fixed and determinable.  But even if there were some technical argument that they were, which there is not, Congress's action in enacting section 6331(h) overrode any such argument.  Congress has eliminated any uncertainty regarding how continuous levies on Social Security benefits are to be treated.  The Court is required to construe the statute in a way that does not render this provision redundant.  "When both specific and general provisions cover the same subject, the specific provision will control, especially if applying the general provision would render the specific provision superfluous, as it would here."  *Norwest Bank Minn. Nat'l Ass'n v. FDIC*, 312 F.3d 447, 451 (D.C. Cir. 2002).  The import of section 6331(h) is clear:  The IRS cannot continuously levy in excess of 15 percent of an individual's Social Security benefits.  The United States' interpretation of the statute would render section 6331(h) a nullity, and it should therefore be rejected.

Congress intended that the IRS should have the authority to levy continuously on Social Security payments—subject to the 15 percent limit.  That intent should be respected.

**B.     The IRS's Levy of Mr. Keohane's Social Security Payments Had the Continuous Effect of Collecting in Excess of 15 Percent of His Social Security Payments.**

There can be no doubt that the levy on Mr. Keohane's Social Security payments had "continuous effect" as described in section 6331(h).  In attempting to defend the IRS's practice, even the IRS Chief Counsel has conceded that this type of IRS levy of Social Security benefits "is a single levy with a continuous effect."  I.R.S. Chief Coun. Adv. Mem. 199948004, 1999 WL 1100099.

The following facts are undisputed.  The United States instituted a single levy on Mr. Keohane's benefits.  Stip. ¶ 9.  Pursuant to that levy, and with no further action by the IRS,

the IRS collected in excess of 15 percent of Mr. Keohane's Social Security benefits every month

for twenty-seven months. *Id.* ¶¶ 8, 9, 17. Even after the levy was released on July 23, 2007, the

IRS continued collecting Mr. Keohane's Social Security benefits for an additional month. *Id.*

¶¶ 13-14. The levy had such a "continuous effect" that formal release of the levy was powerless

to stop it. Under any reasonable definition of the word, the levy on Mr. Keohane's Social

Security benefits was continuous. Because the continuous levy collected in excess of 15 percent

of Mr. Keohane's Social Security benefits, it was unlawful.

## III.     MR. KEOHANE SUSTAINED RECOVERABLE DAMAGES AS A RESULT OF THE IRS'S WRONGFUL LEVY.

Mr. Keohane sustained two types of damages, both of which are recoverable

under section 7433. The government's affirmative defense that Mr. Keohane's damages are not

recoverable is without merit. Section 7433(b) defines two categories of recoverable damages:

> (b) Damages.—In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of—
>
>> (1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and
>>
>> (2) the costs of the action.

As an initial matter, the United States has stipulated that "in order to bring this action, Plaintiff

caused to be paid a filing fee of $350 to the Clerk of the United States District Court for the

District of Columbia." Stip. ¶ 29. That $350 is a "cost[]of the action," and it is explicitly defined

as a recoverable item of damage by section 7433(b)(2). The government's own regulations under

section 7433(b)(2) support this reading of the statute: "Costs of the action recoverable as

damages under this section are limited to the following costs: (1) Fees of the clerk and marshall
. . . ."  26 C.F.R. § 301.7433-1(c).  Mr. Keohane is therefore entitled to recover at least $350.[12]

Mr. Keohane is also entitled to recover, as "actual, direct economic damages,"
$23.55 in postage and courier costs that, as the United States has stipulated, Mr. Keohane paid to
send correspondence "to the Tax Clinic as a proximate result of the IRS levying in excess of 15%
of his monthly Social Security payments."  Stip. ¶ 23; *id.* Ex. B (copies of the stamped envelopes
containing the correspondence).   The envelopes that Mr. Keohane sent to the Tax Clinic
"contained correspondence and other documents relating to the IRS's levy of Plaintiff's Social
Security payments."  Stip. ¶ 20.  Mr. Keohane lives abroad, and these mailing costs were a
prerequisite to his ability to communicate with the Tax Clinic.  The costs detailed above were
incurred by Mr. Keohane to seek the Tax Clinic's aid in obtaining relief from the IRS's wrongful
levy.

The regulations define "actual, direct economic damages" as "actual pecuniary
damages sustained by the taxpayer as the proximate result of the reckless or intentional, or
negligent, actions" of the IRS.  26 C.F.R. § 301.7433-1(b)(1).  The government has stipulated
that the correspondence costs sustained by Mr. Keohane were a proximate result of IRS action.
*See* Stip. ¶ 23.  So Mr. Keohane is barred from recovering his postage and courier costs only if
they fall into the regulations' exclusion of litigation costs and administrative costs from

---

[12]     Mr. Keohane notes that the United States' First Affirmative Defense alleges only that Mr.
Keohane's expenses were not "actual, direct economic damages" under section
7433(b)(1).  It does not allege that they were not "costs of the action" under section
7433(b)(2).

recovery.[13]  *See* 26 C.F.R. § 301.7433-1(b)(2) ("Litigation costs and administrative costs are not recoverable as actual, direct economic damages.").

      The correspondence costs were not administrative costs.  The regulations define "administrative costs" as "any costs incurred pursuing administrative relief from the action taken by an officer or employee of the Internal Revenue Service."[14]  26 C.F.R. § 301.7433-1(b)(2)(ii). More specifically, the regulations define administrative costs to include "[a]ny administrative fees or similar charges imposed by the Internal Revenue Service," *id.*, and "[e]xpenses, costs, and fees" such as "[c]ourt costs," "[e]xpenses of expert witnesses," the "[c]ost of any study, analysis, engineering report, test, or project," and "[f]ees paid or incurred for the services of attorneys . . . in connection with [an administrative] proceeding."  *Id.* § 301.7433-1(b)(2)(i).  Mr. Keohane's costs were not fees paid for the services of attorneys; the Tax Clinic provided Mr. Keohane its services free of charge.  Instead, Mr. Keohane incurred these costs as a direct and proximate result of his diligent attempts to discover if the IRS's onerous levy was in fact illegal and if he had any recourse to end it.  They are not "administrative costs" as defined by the regulations.

      For the reasons stated above, Mr. Keohane is entitled to a total of $373.55 in damages.

## IV.     MR. KEOHANE EXHAUSTED HIS ADMINISTRATIVE REMEDIES AND TIMELY FILED SUIT.

      To prevail on his claim under section 7433, Mr. Keohane may be required to show that he exhausted his administrative remedies, and he must show that he brought the action

---

[13]    The costs incurred were not litigation costs because they were incurred before litigation was initiated.

[14]    This definition makes clear that the regulations use the word "administrative" in the sense of costs incurred in seeking recovery of damages at an "administrative agency" rather than describing a category of costs that are often performed by administrative personnel (such as copying or filing).

within two years of the date when it accrued.  *See* 26 U.S.C. § 7433(d).  Mr. Keohane clearly

meets both requirements.

      **A.**    <u>**Mr. Keohane Exhausted His Administrative Remedies.**</u>

      Mr. Keohane fully exhausted his administrative remedies.  *See* 26 U.S.C.

§ 7433(d)(1) (requiring exhaustion of administrative remedies in a section 7433 action).  He filed

his administrative claim on November 27, 2007.  Stip. ¶ 24.  The IRS rejected this claim because

of a perceived failure to substantiate damages.  *Id.* ¶ 25.  Mr. Keohane responded to this rejection

by including additional support and documentation.  *Id.* ¶ 26.  On or about May 28, 2008, the

IRS denied Mr. Keohane's administrative claim and notified him in writing that no

administrative appeal was available.  *Id.* ¶ 27; *id.* Ex. C.  The IRS informed Mr. Keohane that

"[y]ou are not entitled to make another administrative appeal of this decision" and that if "you

wish to take further action, you may file a civil action for damages under Treasury Regulation

301.7433-1 in federal district court."  *Id.*; *see United States v. Olender*, No. 8:07-cv-00930-EAK-

EAJ, 2007 WL 2714105, at *2 (M.D. Fla. Sept. 17, 2007) (finding that an identical letter from

the IRS demonstrated proper exhaustion).

      To the extent the United States contends that Mr. Keohane did not exhaust his

remedies in a timely fashion, this contention is entirely derivative of its claim that Mr. Keohane's

claim is barred by the statute of limitations, which is incorrect for the reasons stated below.  The

regulations detailing the requirements for administrative claims do not contain any timeliness

requirement other than the one that applies generally to actions under section 7433.  *See* 26

C.F.R. § 301.7433-1(e).  If this action is timely, the administrative claim was as well.[15]

---

[15]    In any event, the United States waived any objection to Mr. Keohane's exhaustion of
administrative remedies by failing to raise it in its Amended Answer as an affirmative
defense.  *See* United States' Answer to Am. Compl. at 7.  In *Shane v. United States*, Civil

B.     **Mr. Keohane Brought this Action within the Statute of Limitations.**

Mr. Keohane has brought this action, as required by 26 U.S.C. § 7433(d)(3), "within 2 years after the date the right of action accrue[d]."  The statute of limitations under section 7433 begins to run either on the date of the last collection action or on the date that a taxpayer actually learns that the collection action is illegal.   Under either standard, Mr. Keohane's action is timely.

Mr. Keohane filed his Complaint on December 4, 2008.[16]  *See* Stip. ¶ 28.  So if the action accrued on or after December 5, 2006, this action is timely.  The United States argues that the action accrued on or about June 6, 2005, when Mr. Keohane knew that the IRS had levied on his Social Security payments.  *See id.* ¶ 11.  By contrast, Mr. Keohane contends that this action accrued for purposes of section 7433 either (1) on the date of the last wrongful collection action, July 26, 2007, or (2) on the date that he first learned that the IRS had conducted the levies continuously rather than through individual paper levies, a date after December 4, 2006.  *See* Stip. ¶¶ 14, 18.

i.     **The Statute Began to Run on the Date of the Last Wrongful Collection Action.**

Two recent opinions from other Courts in this District have concluded that the statute of limitations on a section 7433 action begins to run on the date of the last collection

---

Action No. 07-577(RBW), 2008 WL 101739, at *7 (D.D.C. Jan. 9, 2008), the Court held that "exhaustion of administrative remedies is not an element of the plaintiff's claim under § 7433.  It is an affirmative defense."  Federal Rule of Civil Procedure 8(c) requires defendants, in responding to a pleading, to "affirmatively state any avoidance or affirmative defense."  *See also Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc.*, 513 F.2d 407, 419 n.92 (D.C. Cir. 1975) (holding that "failure to plead an affirmative defense generally waives the defense").  The United States did not do so, and it therefore has waived the defense.

[16]     The operative First Amended Complaint (which was amended only to more specifically list damages) asserts the same claims as the initial Complaint, so it relates back to the date of the Complaint.  *See* Fed. R. Civ. P. 15(c)(1)(B).

pursuant to the levy.  *See Davis v. United States*, 569 F. Supp. 2d 91, 97 (D.D.C. 2008); *Wallace v. United States*, 557 F. Supp. 2d 100, 104 (D.D.C. 2008).  In *Wallace*, the Court addressed precisely the issues presented in this case—when the statute begins to run for purposes of section 7433.  *Wallace* noted three possibilities: (1) the date the levy began; (2) the date the levy was released (the last collection action); and (3) "largely fact-based determinations based on reasonable notice."  *Id.*  *Wallace* applied the continuing violations doctrine and concluded that "when a tort involves continuous injury, the cause of action accrues when the tortious conduct ceases, and to hold otherwise would be to allow the tortfeasor to acquire a right to continue its conduct by virtue of the statute of limitations."  *Id.* (citation omitted).  *See also Davis*, 569 F. Supp. 2d at 97 (analyzing the "latest adverse action by IRS agents" as the date of accrual of the claim).

This case falls squarely within the continuing violations doctrine.  *See Page v. United States*, 729 F.2d 818, 821-22 (D.C. Cir. 1984).  Every month for twenty-seven months, the United States' levy inflicted a new, distinct, and palpable harm on Mr. Keohane.  The United States will likely rely on *Long v. United States*, 604 F. Supp. 2d 119, 122 (D.D.C. 2009), for the proposition that the continuing violation doctrine does not apply here, but *Long* is not applicable to the facts of this case.  In *Long*, the plaintiffs sought to recover damages from challenged tax *liens* (not *levies*) placed on their home.  But they waited to bring their action until more than two years after the liens were placed on their home.  *Long* held that the liens were not subject to the continuing violation doctrine because each lien constituted a single, discrete act, even if it had continuing effects.  *Id.*  This case, by contrast, involves a continuing levy, which creates a new and palpable harm each month that the money is collected from the taxpayer's Social Security check.  A lien protects the interests of the creditor filing it, but it does not operate to seize any

property or funds. Therefore, once a lien is placed, it has had its entire intended effect. By contrast, the levy in this case continued each month to have the effect of seizing a different Social Security payment. This essential difference between liens and levies should explain the differing results in *Long* and *Wallace*. *See EC Term of Years Trust*, 550 U.S. at 434-35 (recognizing a difference, for statute of limitations purposes, between liens and levies).

The difference between liens and levies, and thus *Long* and *Wallace*, can be illustrated by a simple example. If Smith throws a rock at Jones and hits him, the injury to Jones may linger for many years. But the fact that the injury lingers is not sufficient to toll the statute. If, on the other hand, Smith builds a machine in a single day that subsequently throws a rock at Jones once a month, Jones will be able to recover damages caused by the last rock thrown, even if it was thrown after the statute for the first rock thrown by the machine would have run. The IRS's levy in this case is analogous to Smith's rock-throwing machine. As such, the continuing violation doctrine applies, and Mr. Keohane's action was timely brought within two years of the final collection from his Social Security payments.

### ii. Mr. Keohane Brought this Action Within Two Years of When He Knew or Reasonably Should Have Known of the IRS's Wrongful Conduct.

Mr. Keohane contends that the continuing violations doctrine should result in the statute beginning to run on the date of the final wrongful collection pursuant to the levy. Even if the Court were to conclude otherwise, Mr. Keohane also brought this action within two years of his first "reasonable opportunity to discover all essential elements of a possible cause of action." 26 C.F.R. § 301-7433-1(g)(2). Obviously, "[w]hen a taxpayer actually learns of a statutory or regulatory defect in an IRS collection activity, he has had a reasonable opportunity to discover the essential elements of his cause of action." *Bright v. United States*, 446 F. Supp. 2d 339, 344

(E.D. Pa. 2006).  To determine whether a taxpayer had a reasonable opportunity to discover the essential elements of his claim before he had actual knowledge of the elements, one must turn to the undisputed facts.  Those facts show that Mr. Keohane filed his claim within two years of learning of the essential elements of his claim.

The essential elements of a section 7433(a) claim are the (a) collection of federal income tax, (b) reckless, intentional, or negligent, disregard of the Internal Revenue Code by an officer or employee of the IRS, and (c) actual, direct, economic damages sustained as a proximate result of the collection.  The intentional disregard of the Internal Revenue Code in this case by IRS officers was the use of a single levy to continuously collect in excess of 15 percent of Mr. Keohane's monthly Social Security payments and the failure to stop the continuous levy after Mr. Keohane notified the IRS that it was in violation of the statute.  As Mr. Keohane explained above, the IRS could legally have levied in excess of 15 percent of his Social Security benefits by filing monthly paper levies.  Thus, the first time that Mr. Keohane had a reasonable opportunity to discover the essential elements of his claim was the first time he knew or should have known that the IRS was illegally using a single levy, rather than multiple paper levies, to collect in excess of 15 percent of his Social Security benefits.

The first time that happened was when Mr. Keohane contacted the Taxpayer Advocate in order to have the monthly levy of his Social Security payments reduced, some time after December 4, 2006.  *See* Stip. ¶¶ 18-19.  Certainly, the notice of levy that the IRS sent Mr. Keohane (which he did not receive) did not put Mr. Keohane on notice that the IRS was proceeding pursuant to a continuous levy rather than a paper one.  *See* Stip. Ex. A.  That notice says nothing about the source of authority that the IRS claims for the continuing levy of Mr.

Keohane's Social Security payments.   And Mr. Keohane did not receive any additional information from the IRS about the levy after that initial communication.

In the absence of any information suggesting the contrary, Mr. Keohane ought to have been able to presume that his government was acting lawfully.  "[I]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties."  *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926); *see also FCC v. Schreiber*, 381 U.S. 279, 296 (1965) (invoking "the presumption to which administrative agencies are entitled — that they will act properly and according to law").  The first time that Mr. Keohane was given reasonable notice that the IRS might be violating the law was when he learned that the IRS was levying on his Social Security benefits using only one paper levy.  He brought this action within two years of learning that fact, and this action is therefore timely.

## V.      THE COURT SHOULD AWARD MR. KEOHANE HIS REASONABLE ATTORNEY'S FEES AND OTHER COSTS.

Under 26 U.S.C. § 7430, prevailing parties in wrongful collection actions such as this one may be entitled to reasonable litigation costs, including reasonable attorney's fees.  *See* 26 U.S.C. § 7430(c)(1)(B)(iii); 26 C.F.R. § 301.7433-1(h); *Baker v. Commissioner*, 787 F.2d 637 (D.C. Cir. 1986).  There is no justification for the United States' actions or litigation position in this case.   Congress enacted section 6331(h) in 1997, and notwithstanding the clear and straightforward language of the statute, the IRS has been disregarding it for over a decade.  The IRS has acknowledged in its own internal memoranda that its position "create[s] certain hazards."  *See* I.R.S. NSAR 11574, 2000 WL 34423459.  One of those hazards is that this Court will deem its position unjustified.

Mr. Keohane, as required by section 7430(b)(1), exhausted the administrative remedies offered for his claim, and, for the reasons stated above, he should be the prevailing

party in this action.  He is therefore entitled to the reasonable litigation costs listed in section 7430.

*       *       *

## CONCLUSION

Although the amount of damages Mr. Keohane is seeking to recover in this action is modest, the principle at stake is not.  In section 6331(h), Congress gave the IRS the continuous levy authority that the Treasury had sought in its 1997 legislative proposals, but it limited that authority for the protection of elderly and disabled recipients of Social Security benefits.  The IRS has seized the authority but ignored the limit.  Mr. Keohane seeks a judgment that holds the IRS within Congress's limits.

Mr. Keohane therefore respectfully requests that the Court grant his Motion for Summary Judgment on all claims and award him $373.55 in damages, plus costs and attorney's fees.

Dated November 13, 2009.

Respectfully submitted,

 /s/ David W. Foster
Armando Gomez, D.C. Bar No. 459069
Alan J.J. Swirski, D.C. Bar No. 420046
David W. Foster, D.C. Bar No. 984393
1440 New York Avenue, N.W.
Washington, DC  20005
(202) 371-7000

Diana L. Leyden
University of Connecticut
    School of Law Tax Clinic
65 Elizabeth Street
Hartford, CT  06105

*Attorneys for Plaintiff*

25