**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PAUL KEOHANE**,          ) | |
| ) | |
| Plaintiff,          ) | |
| ) | |
| vs.          ) | **Case No.:  1:08-cv-02081-HHK** |
| ) | |
| **UNITED STATES OF AMERICA**,          ) | |
| ) | |
| Defendant.          ) | |
| _____          ) | |

**PLAINTIFF'S RESPONSE TO UNITED STATES'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT........................................................................................................................................2

I.    SECTION 6331(h) UNAMBIGUOUSLY LIMITS THE IRS' LEVY AUTHORITY.................2

II.   EACH OF THE GOVERNMENT'S PROCEDURAL CLAIMS IS UNAVAILING. .................4

     A.  Mr. Keohane Timely Filed This Suit. ...........................................................................4

     B.  Mr. Keohane Suffered Damages Under Section 7433, and the Amount of Those Damages Is Not In Dispute. ........................................................................................8

CONCLUSION...................................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Brown v. GSA*, 425 U.S. 820 (1976) .................................................................................................. 4

\*    *Davis v. United States*, 569 F. Supp. 2d 91 (D.D.C. 2008) ............................................................. 5

*EC Term of Years Trust v. United States*, 550 U.S. 429 (2007) ................................................. 4, 7

*Glantz v. United States*, No. 97-606T, 1997 WL 718474 (Fed. Cl. Sept. 17, 1997) .................... 10

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ................................................................ 6

*In re Swine Flu Prods. Liab. Litig.*, 764 F.2d 637 (9th Cir. 1985) .................................................. 5

*Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) .................................................. 8

*Macklin v. United States*, 300 F.3d 814 (7th Cir. 2002) ................................................................. 7

*Nesovic v. United States*, 71 F.3d 776 (9th Cir. 1995) .................................................................... 7

*Page v. United States*, 729 F.2d 818 (D.C. Cir. 1984) .................................................................... 6

*Rosales v. United States*, 824 F.2d 799 (9th Cir. 1987) .................................................................. 5

*Smith v. IRS*, No. 90-3041, 1991 U.S. App. LEXIS 23139 (8th Cir. July 2, 1991) ....................... 3

\*    *Wallace v United States*, 557 F. Supp. 2d 100 (D.D.C. 2008) ................................................ 5, 7, 8

*Zeidler v. United States*, 601 F.2d 527 (10th Cir. 1979) ................................................................. 5

## STATUTES & REGULATIONS

\*    26 C.F.R. § 301.7433-1 ........................................................................................................ 8, 9, 10

\*    26 U.S.C. § 6331 ..................................................................................................................... *passim*

\*    26 U.S.C. § 7430 ................................................................................................................................ 9

\*    26 U.S.C. § 7433 ..................................................................................................................... *passim*

## **OTHER AUTHORITIES**

\*      Department of the Treasury, *General Explanations of the Administration's Revenue Proposals* (Feb. 1997) .................................................................................................... 3

\*      H.R. Rep. No. 1104, 100th Cong., 2d Sess. (1988), reprinted in 1988 U.S.S.C.A.N. 5048 ............ 5

        S. Rep. No. 33, 105th Cong., 1st Sess. (1997), reprinted in 1997-4 C.B. (Vol. 2) 1067, *available at* 1997 WL 353020 ........................................................................................ 3

        Louis Carroll, *Alice's Adventures in Wonderland & Through the Looking Glass* (1871) ................ 2

Plaintiff Paul Keohane respectfully submits this memorandum in opposition to the United States' motion for summary judgment, and prays that this Court instead grant summary judgment in his favor for the reasons set forth in his Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Keohane MSJ"), and as amplified herein.

## PRELIMINARY STATEMENT

As an initial matter, it is important to make clear what this case is not about. First, there is no dispute regarding any of the material facts, as the parties filed a joint stipulation of undisputed facts. That stipulation confirms that Mr. Keohane expended funds of the type that are recoverable under 26 U.S.C. § 7433.[1] That stipulation also provides the facts necessary to demonstrate that the statute of limitations does not bar this action. That stipulation further provides the facts necessary to demonstrate that the levy at issue here was a continuous levy. Second, unlike many of the authorities cited by the United States, this case does not involve a tax protester, as there is no dispute regarding the calculation of Mr. Keohane's tax liability.

What this case is about is whether the Executive Branch, acting through the Internal Revenue Service ("IRS"), may casually dismiss an express limitation enacted by the Legislative Branch that limits the Executive's authority to levy on Social Security payments to elderly recipients, such as Mr. Keohane. Specifically, in February 1997 the Treasury Department requested Congress to provide authority for the IRS to subject non-means tested Federal payments, like Social Security payments, to continuous levy without the need for the IRS to serve more than one levy. Congress responded promptly, granting the IRS the requested authority through the enactment of section 6331(h) as part of the Taxpayer Relief Act of 1997, Public Law 105-34 (the "1997 Act"). The United States would have this Court make a nullity of

---

[1] All section references in this memorandum are to the Internal Revenue Code, Title 26 of the United States Code (2006). Defined terms have the same meaning as in the Keohane MSJ.

that legislative action, both in its claim that the IRS can elect whether or not to subject itself to the limitation provided in section 6331(h) and in its claim that the levy at issue was not "continuous" – a claim that requires Alice-in-Wonderland definitional flexibility.[2]

## **ARGUMENT**

### I. SECTION 6331(h) UNAMBIGUOUSLY LIMITS THE IRS' LEVY AUTHORITY.

Section 6331(h) clearly states that a continuous levy cannot exceed 15 percent of any specified payment due to the taxpayer. There is nothing optional about this statutory directive, as the United States admits. (*See* Brief in Support of United States' Motion for Summary Judgment ("Gov't MSJ") at 12.) And there is no dispute that the levy applied by the IRS to Mr. Keohane's Social Security payments far exceeded 15 percent of 27 consecutive monthly Social Security payments. (*See id.* at 3, 4; Stip. ¶ 8.) There also is no dispute that the IRS accomplished that collection action through the issuance of a single levy to the Social Security Administration (*See id.* at 3.) Yet the United States incredibly claims that such action did not effect a "continuous levy."

Mr. Keohane explained at length in his initial memorandum why section 6331(h) forbade the collection action taken in his case, and he will not burden the Court with a full repetition of his argument. Instead, this opposition replies to the points made in the government's summary judgment paper.

---

[2]  This argument is akin to that made by Humpty Dumpty in Lewis Carroll's *Alice in Wonderland*:

> "When I use a word," Humpty Dumpty said, in a rather scornful tone, "it means just what I choose it to mean, neither more nor less." "The question is," said Alice, "whether you can make words mean so many different things." "The question is," said Humpty Dumpty, "which is to be master – that's all."

Louis Carroll, *Alice's Adventures in Wonderland & Through the Looking Glass* (1871).

Mr. Keohane does not contend that the IRS lacked the authority to institute one-time levies of Social Security benefits prior to enactment of section 6331(h).  Nor does Mr. Keohane contend that the IRS could not levy with continuous effect prior to enactment of section 6331(h) on payments that were fixed and determinable.  What Mr. Keohane does contend is that prior to enactment of section 6331(h), it was not clear whether Social Security payments were sufficiently fixed and determinable to qualify for levy with continuous effect under section 6331(a).  (*See* Keohane MSJ at 11-12.)  The amount of Social Security benefits can change, and eligibility for those benefits can change as well.  (*See id.* at 12.)

If the IRS could continuously levy on a taxpayer's Social Security payments, the Treasury Department would not have needed to seek authority for such levies in February 1997, and Congress would not have needed to enact section 6331(h) in the 1997 Act.  Those involved in enactment of section 6331(h) apparently agreed.  The Treasury Department, in seeking to "ESTABLISH IRS CONTINUOUS LEVY," complained that "[u]nder section 6331, certain kinds of non-means tested, recurring Federal payments are subject to levy by the IRS to collect taxes, but the levy must be served repeatedly by the IRS in order to intercept each (or part of each) payment." *See* Department of the Treasury, *General Explanations of the Administration's Revenue Proposals* 88 (1997).  And the Senate Finance Committee explained that under section 6331(h) "Social Security payments, which are subject to levy under present law, would become subject to continuous levy." S. Rep. No. 33, 105th Cong., 1st Sess. 156, reprinted in 1997-4 C.B. (Vol. 2) 1067, 1236, *available at* 1997 WL 353020.

The government has not cited a single case prior to enactment of section 6331(h) that allowed levies of Social Security benefits with the continuous effect that it now describes.  The government cites *Smith v. IRS*, No. 90-3041, 1991 U.S. App. LEXIS 23139, at *2 (8th Cir.

3

July 2, 1991), but that case involved only a one-time levy, not an ongoing levy with continuous effect. It was, at most, uncertain whether the IRS possessed the authority to institute levies with continuous effect on Social Security benefits.

Congress resolved this uncertainty by providing the Treasury with the specific remedy it requested for its problem with Social Security levies. It is well established that "a precisely drawn, detailed statute pre-empts more general remedies." *EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007) (quoting *Brown v. GSA*, 425 U.S. 820, 834 (1976)). Section 6331(h) has provided the IRS with a precisely drawn, detailed extra-judicial remedy for delinquent tax payments in section 6331(h); that remedy preempts resort by the IRS to more general remedies.

The undisputed facts show that the IRS continuously levied in excess of fifteen percent of Mr. Keohane's Social Security benefits. The statutory text and the legislative history demonstrate that this collection action was unlawful. Mr. Keohane is therefore entitled to summary judgment on his claims.

## II.     EACH OF THE GOVERNMENT'S PROCEDURAL CLAIMS IS UNAVAILING.

### A.     Mr. Keohane Timely Filed This Suit.

Mr. Keohane filed his Complaint in this action on December 4, 2008, "within 2 years after the date the right of action accrue[d]." § 7433(d)(3). The right of action accrued either (1) on the date of the final wrongful collection action (July 26, 2007) or (2) on the date that Mr. Keohane first learned that the IRS had conducted the levies continuously rather than through individual papers levies (a date after December 4, 2006). (*See* Stip. ¶¶ 14, 18.) The Complaint was filed within two years of both of those dates, and thus this action is timely. (*See* Keohane

MSJ at 20-24; *see also Davis v. United States*, 569 F. Supp. 2d 91, 97 (D.D.C. 2008); *Wallace v. United States*, 557 F. Supp. 2d 100, 104 (D.D.C. 2008).)

The government make three arguments regarding the timeliness of this case. First, the government contends that Mr. Keohane knew or should have known all of the elements of his claim on June 6, 2005, when his Social Security benefits were first levied. Second, it contends that the continuing violation doctrine in inapplicable to claims under section 7433 generally, and to Mr. Keohane's claim in particular. Finally, the government argues that Mr. Keohane is merely complaining of the lingering effects of a single act by the government. All of these arguments are incorrect.

In the Conference Committee Report accompanying the enactment of section 7433, the Conference Committee stated as follows:

> The conferees intend that the general accrual rule applied under the Federal Tort Claims Act (28 U.S.C. section 2401(b)) be applied to actions under this provision; that is, the right of action does not accrue until a claimant has had a reasonable opportunity to discover all the essential elements of a possible cause of action. *See, e.g.*, *Rosales v. United States*, 824 F.2d 799 (9th Cir. 1987); *Zeidler v. United States*, 601 F.2d 527 (10th Cir. 1979).

H.R. Rep. No. 1104, 100th Cong., 2d Sess. (1988), reprinted in 1988 U.S.S.C.A.N. 5048, 5289 n.3. *Zeidler* held that the term "*all* of the essential elements" includes "damages, duty, breach, and causation." *Zeidler v. United States*, 601 F.2d 527, 530 (10th Cir. 1979). *Rosales* further clarified that the timeliness standard "focuses on whether the plaintiff could reasonably have been expected to make the inquiry in the first place." *Rosales v. United States*, 824 F.2d 799, 804 (9th Cir. 1987) (quoting *In re Swine Flu Prods. Liab. Litig.*, 764 F.2d 637, 642 n.2 (9th Cir. 1985)). As Mr. Keohane has previously explained (*see* Keohane MSJ at 23-24), there was a perfectly legal way for the IRS to collect a large percentage of his Social Security benefits each month: individual monthly paper levies. None of the IRS's actions put Mr. Keohane on notice

5

that the IRS had avoided the constraints of the paper levy process by instituting an illegal continuous levy on his Social Security benefits. Until he received some indication to the contrary, Mr. Keohane was entitled to presume that his government had acted lawfully. Therefore, he first could have been reasonably expected to make further inquiry when he learned, after December 4, 2006, in response to a FOIA request that the government had instituted a single continuous levy on his Social Security benefits.

Even if Mr. Keohane could have been expected to inquire about the IRS's illegal actions before December 4, 2006, which he could not, the continuing violations doctrine should toll the statute until the final wrongful collection action by the IRS. The United States does not appear to dispute that if the continuing violation doctrine applies, Mr. Keohane's action is timely. Instead, it asserts that the continuing violation doctrine should not apply to claims under section 7433 and to claims like Mr. Keohane's in particular.

The government's claim that the continuing violations doctrine is inapplicable to all section 7433 cases is specious. The committee report accompanying the enactment of section 7433 incorporated the statute-of-limitations jurisprudence surrounding the Federal Tort Claims Act. *See supra* p. 5 (quoting the report). When section 7433 was adopted in 1988, it was well established that the continuing violations doctrine applied to actions brought under the Federal Tort Claims Act. For example, *Page v. United States*, 729 F.2d 818 (D.C. Cir. 1984), which the government discusses at length in its brief (*see* Gov't MSJ at 21), applied the continuing violations doctrine to toll a medical malpractice action brought under the Federal Tort Claims Act. Congress is presumed to act with an awareness and understanding of existing doctrine, especially where it invokes that doctrine by name and with specific case citations. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988). In enacting section 7433, Congress

6

invoked the Federal Tort Claims Act, and the government should not be permitted to disavow that invocation now.

The government also contends, incorrectly, that the continuing violations doctrine is inapplicable to the facts of Mr. Keohane's case. It first cites two cases, *Macklin v. United States*, 300 F.3d 814, 824 (7th Cir. 2002), and *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995), involving tax *liens*, not tax *levies*. But as Mr. Keohane has previously explained, the Supreme Court has recognized that there are important differences between federal tax liens and federal tax levies for statute-of-limitations purposes. *See EC Term of Years Trust v. United States*, 550 U.S. 429, 434-35 (2007). A lien, which encumbers a taxpayer's property, inflicts all of the damage that it will ever inflict when it is instituted. A continuous levy, by contrast, inflicts new harm each time that it collects additional funds. Federal tax lien cases therefore do not support the government's argument in this federal tax levy case.

The government then seeks to distinguish *Wallace v. United States*, 557 F. Supp. 2d 100, 104 (D.D.C. 2008), which squarely rejects the government's position in this case, by attaching a decision rendered by a Wyoming district court rendered at a later stage in the case. The government, however, conveniently neglects to mention the important differences between this case and *Wallace*. In *Wallace*, attached to the government's motion as Exhibit C, it was "clear that the Plaintiff knew of, and decided that the levy was illegal and impermissible even before it began." (Gov't MSJ Ex. C at 10.) The court expressly held that "Plaintiff has never alleged that she was unaware of the facts surrounding the circumstances of the levy imposed by the Internal Revenue Service." (*Id.* at 11.) Contrast the facts in *Wallace* with those in Mr. Keohane's case. It is stipulated that Mr. Keohane did not learn that the IRS was executing a continuous levy on his Social Security benefits, rather than a series of monthly paper levies, until

7

after December 4, 2006, a date within the statute of limitations period. (*See* Stip. ¶ 18.) The Wyoming *Wallace* decision thus does not support the government's position here.

Finally, the government claims that the regular and ongoing monthly deprivation of Mr. Keohane's Social Security benefits was merely a residual effect of its decision to institute a single levy. The government argues that it made a single levy under section 6331(a) that had an ongoing effect. By contrast, Mr. Keohane contends that the government violated section 6331(h) each month on the twenty-seven occasions it collected in excess of 15% of Mr. Keohane's Social Security benefits without executing multiple levies. Mr. Keohane has explained at length that section 6331(a) does not authorize the actions the IRS took to collect his Social Security benefits, and that the IRS's levy was, under any reasonable definition of the word, "continuous." Therefore, the levy was governed by section 6331(h), and it inflicted new harm on Mr. Keohane each time he was denied the Social Security benefits to which he was entitled.[3] For those reasons, the Court should hold that the IRS engaged in continuing violations of section 6331(h) in levying upon Mr. Keohane's Social Security benefits.

    **B.**    **Mr. Keohane Suffered Damages Under Section 7433, and the Amount of Those Damages Is Not In Dispute.**

Mr. Keohane has proved that he sustained both categories of damages described in section 7433, and the amount of those damages is not in dispute.

First, Mr. Keohane incurred a fee of $350, which he caused to be paid to the Clerk of this Court. (Stip. ¶ 29.) Section 7433(b)(2) explicitly defines "the costs of the action" as recoverable damages. *See also* 26 C.F.R. § 301.7433-1(c) ("Costs of the action recoverable as

---

[3] The facts of this case are different from those of *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). Unlike the lower paychecks for the plaintiff in *Ledbetter*, which were not themselves the product of separate discriminatory pay decisions, each separate collection of plaintiff's Social Security benefits was inherently wrongful.

damages under this section are limited to the following costs: (1) Fees of the clerk and marshall . . . ."). That fact alone, which the United States does not address in its motion for summary judgment, should dispose of the United States' argument regarding the majority of Mr. Keohane's damages.

Second, the government argues that the proper forum for Mr. Keohane's claims is the United States Tax Court because the damages that he sustained are "administrative costs" rather than "actual, direct economic damages."[4] The government is again incorrect. "[A]ctual, direct economic damages" are "actual pecuniary damages sustained by the taxpayer as the proximate result of the reckless or intentional, or negligent, actions" of the IRS. 26 C.F.R. § 301.7433-1(b)(1).[5]

The correspondence costs Mr. Keohane incurred were not administrative costs. "[A]dministrative costs" are "any costs incurred pursuing administrative relief from the action taken by an officer or employee of the Internal Revenue Service." 26 C.F.R. § 301.7433-1(b)(2)(ii). More specifically, the regulations define administrative costs to include "[a]ny administrative fees or similar charges imposed by the Internal Revenue Service," *id.* § 301.7433-1(b)(2)(ii)(A), and "[e]xpenses, costs, and fees", *id.* § 301.7433-1(b)(2)(ii)(B), such as "[c]ourt costs," "[e]xpenses of expert witnesses," the "[c]ost of any study, analysis, engineering report, test, or project," and "[f]ees paid or incurred for the services of attorneys . . . in connection with

---

[4] Mr. Keohane notes that the government's position now is inconsistent with its position in the IRS letter rejecting his administrative claim. That letter stated that "if you wish to take further action, you may file a civil action for damages under Treasury Regulation 301.7433-1 in federal district court." (Stip. Exhibit C.) The government now claims that this case should have been brought pursuant to section 7430 in the Tax Court. (*See* Gov't MSJ at 24.) Section 7430, however, is not applicable to this case because it was in connection with a collection action. *See* 26 C.F.R. § 301.7430-3(a)(4); *id.* § 301.7430-3(b).

[5] The government has stipulated that the correspondence costs sustained by Mr. Keohane were a proximate result of IRS action. (*See* Stip. ¶ 23.)

[an administrative] proceeding." *Id.* § 301.7433-1(b)(2)(i). Mr. Keohane did not pay the postage fees to the IRS, a court, or an expert witness, and he did not pay them for the services of attorneys; the Tax Clinic provided Mr. Keohane its services free of charge. Instead, these costs were a direct and proximate result of Mr. Keohane's diligent attempts to obtain relief from an onerous IRS levy and to discover if the levy was illegal. Those costs are therefore not administrative costs within the meaning of the regulations.[6]

## CONCLUSION

The Treasury sought Congress's permission to institute continuous levies on Social Security benefits. Congress granted that permission, with only one limitation—that the levies be limited to 15% of the Social Security benefits. Because it finds the limitation burdensome, the government now contends that the permission the Treasury sought was unnecessary and that the grant of authority it received was a nullity. Mr. Keohane respectfully requests that this Court hold the IRS within the limits set by Congress by granting his motion for summary judgment.

Dated December 11, 2009.

                                                Respectfully submitted,

                                                /s/ David W. Foster
                                                Armando Gomez, D.C. Bar No. 459069
                                                Alan J.J. Swirski, D.C. Bar No. 420046
                                                David W. Foster, D.C. Bar No. 984393
                                                1440 New York Avenue, N.W.
                                                Washington, DC  20005
                                                (202) 371-7000

---

[6]  *Glantz v. United States*, No. 97-606T, 1997 WL 718474 (Fed. Cl. Sept. 17, 1997), on which the government relies, is not to the contrary. It addressed a claim for attorneys' fees, which are explicitly defined as non-recoverable by 26 C.F.R. § 301.7433-1(b)(2)(ii)(B).

Diana L. Leyden
University of Connecticut
　　School of Law Tax Clinic
65 Elizabeth Street
Hartford, CT  06105

*Attorneys for Plaintiff*